600 S.E.2d 712 (2004)
267 Ga.App. 624
ANDERSON et al.
v.
UNITED STATES FIDELITY & GUARANTY COMPANY et al.
No. A04A0668.
Court of Appeals of Georgia.
May 28, 2004.
*713 Ray & McKinney, Robert M. Ray, Jr., Ellijay, John P. Tucker, Jr., Blue Ridge, for appellants.
Bovis, Kyle & Burch, John V. Burch, Charles R. Sharp, Atlanta, for appellees.
MIKELL, Judge.
United States Fidelity & Guaranty Company, Fidelity & Guaranty Insurance Company, and Fidelity & Guaranty Company, Inc. (collectively "USF & G") filed an action against James and Christy Anderson ("appellants") and others, seeking reimbursement from defendants as indemnitors of surety bonds issued by USF & G on behalf of Eagle Construction Company of Georgia, Inc. ("Eagle"). The trial court granted USF & G's motions for summary judgment as to liability and damages under the indemnity agreement, and awarded USF & G $141,798.32. Appellants contend that the trial court erred in granting summary judgment on the issue of damages. For reasons that follow, we affirm the trial court.
In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.
(Citations and punctuation omitted.) Carter v. Tokai Financial Svcs., 231 Ga.App. 755, 500 S.E.2d 638 (1998). See also Sullivan v. Fabe, 198 Ga.App. 824, 825(1), 403 S.E.2d 208 (1991). Viewed most favorably to appellants, the evidence shows that Eagle operated as a construction contractor on projects throughout the southeastern United States. USF & G issued performance and payment bonds on behalf of Eagle for construction contracts between Eagle and owners and prime contractors, guaranteeing that Eagle would complete these contracts and that it would pay its suppliers and subcontractors. On September 24, 1997, Eagle, Steven J. Anderson, Tonya Darlene Anderson, and appellants executed a Master Surety Agreement ("indemnity agreement") in favor of USF & G and in partial consideration for the issuance of the performance and payment bonds. Section III(A) of the indemnity agreement provided that,
UNDERSIGNED shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all demands, claims, liabilities, losses and expenses of whatsoever kind or nature (including but not limited to interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided *714 or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT.
Section IV further provided that,
(A) [t]he liability of UNDERSIGNED hereunder shall extend to and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might be liable therefor; (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY'S liability or alleged liability ...; (C) the voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of SURETY shall be prima facie evidence of the fact and extent of the liability of UNDERSIGNED to SURETY.
In 1999, Eagle experienced financial difficulties, resulting in its inability to complete projects and/or pay subcontractors and suppliers. Subsequently, USF & G received claims on the bonds it issued for several construction projects. USF & G advised Eagle of the claims and requested Eagle's assistance in addressing the claims, several of which resulted in lawsuits. Pursuant to its obligations under the bonds, USF & G incurred attorney fees related to defending the claims on behalf of Eagle, and also made direct payments to several of Eagle's subcontractors and suppliers.
In August 2000, USF & G filed this action seeking reimbursement. On June 11, 2001, USF & G filed a motion for summary judgment. In support of the motion, USF & G filed the affidavits of John Simanski and Matthew L. Silverstein. Simanski is a vice president of USF & G and Silverstein is the USF & G claims attorney who is the custodian of records for all documents related to the Eagle matter. Simanski averred that as of May 22, 2001, USF & G incurred damages in the amount of $140,319.63, as a result of its issuance of bonds on behalf of Eagle. An itemized statement of losses, expenses and costs is attached to Simanski's affidavit. Silverstein's affidavit stated that Eagle did not reimburse USF & G for its losses, expenses and costs. According to Silverstein, USF & G hired a construction consulting firm to assist in evaluation of the claims under the bonds; paid for the legal services necessary to defend Eagle in suits by subcontractors/suppliers; paid the legal fees necessary to enforce its own interests under the indemnity agreement; hired Investigative Group International, Inc. ("IGI"), to research the assets and resources of the defendants; and made direct payments to several of Eagle's subcontractors and suppliers.
On April 22, 2002, the trial court granted USF & G's motion on the issue of liability but denied the motion on the issue of damages. On July 1, 2002, USF & G filed a second motion for summary judgment on the issue of damages. In support of this motion, USF & G filed the second affidavit of Silverstein, which averred that USF & G had paid out in excess of $152,122.49, as a result of its issuance of bonds on behalf of Eagle. Attached to the second affidavit is a schedule/summary of each payment made by USF & G as well as copies of invoices and other documents reflecting the expenses incurred and paid by USF & G. In response, defendants filed the affidavit of Mark Rogers, Eagle's project manager from February, 1998 to August, 2000. Rogers disputes Silverstein's affidavit and the claims paid by USF & G, and notes that it is "impossible for anyone to say if an expense sought to be recovered by [USF & G] relates to anything that is attached [to Silverstein's affidavit] because none of the underlying claim documents [including the actual bonds] have ever been provided to the [c]ourt or to anyone else." Rogers further opines that the expenses incurred by USF & G were unreasonable and unnecessary. Rogers also notes that Silverstein's second affidavit is not sworn; rather, Silverstein merely verified the motion for summary judgment.
On February 19, 2003, a hearing was held on USF & G's second motion for summary judgment. The hearing was limited to arguments from counsel and neither party offered testimony. On February 24, 2003, USF & G filed Silverstein's third affidavit which is identical to his second affidavit but includes a properly executed jurat. On June 30, 2003, the trial court granted USF & G's motion and entered judgment in favor of USF & G *715 in the amount of $141,798.32.[1] Appellants appeal this ruling, arguing that the trial court failed to view the record in the light most favorable to them and erroneously ignored Rogers' conflicting affidavit. Appellants also argue that USF & G failed to meet its prima facie burden of proof.
1. In their first enumeration of error, appellants contend that USF & G did not meet its prima facie burden of proof for three reasons: (a) billing summaries and statements, such as the ones attached to Silverstein's affidavit are inadmissible hearsay; (b) Silverstein's second and third affidavits, which were admitted and relied on by the trial court, were not sworn to by an officer of USF & G as required by Section IV of the indemnity agreement; and (c) the materials contained in Silverstein's affidavits, which contain few original documents and were never tendered to the trial court or made available at the hearing, are inherently unreliable. Appellants do not dispute that they are bound by the indemnity agreement.
At the outset, we note that this Court consistently has upheld the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds. See, e.g., Nguyen v. Lumbermens Mut. Cas. Co., 261 Ga.App. 553, 555(1), 583 S.E.2d 220 (2003); Rhodes v. Amwest Surety Ins. Co., 207 Ga.App. 441, 428 S.E.2d 581 (1993); Horton v. United States Fidelity &c. Co., 194 Ga.App. 881, 392 S.E.2d 25 (1990); M-Pax, Inc. v. Dependable Ins. Co., 176 Ga.App. 93, 335 S.E.2d 591 (1985). When interpreting such agreements, we apply the ordinary rules of contract construction. See Tuzman v. Leventhal, 174 Ga.App. 297, 299, 329 S.E.2d 610 (1985). "[N]o construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." (Punctuation and footnote omitted.) Nguyen, supra at 555(1), 583 S.E.2d 220. The indemnity agreement at issue expressly provided that if USF & G believed in good faith that it might be liable for payments, it was entitled to indemnity from appellants. Accordingly, once USF & G made its prima facie showing of good-faith payments, the burden shifted to appellants to establish bad faith. See id. ("`Where a decision is left to the discretion of a designated entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary or capricious so as to amount to an abuse of that discretion.'") (footnote omitted).
Appellants' arguments challenging the validity of Silverstein's affidavits and the attached documents are without merit. Pursuant to OCGA § 9-11-56,
[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.
OCGA § 9-11-56(e).
First, we reject appellants' argument that the trial court erred in relying on Silverstein's affidavit because Silverstein has never been shown to be an officer of USF & G, as required by Section IV(C). The record reflects that Silverstein is a claims attorney at USF & G and the custodian of records for all documents related to the Eagle matter. Looking at the substance of Silverstein's affidavits, rather than the nomenclature of his position at USF & G, it is clear that he was USF & G's official in charge of the Eagle matter. Silverstein's affidavit is sufficient under OCGA § 9-11-56(e) and Section IV(C) of the indemnity agreement. See, e.g., Horton, supra (indemnitor unable to refute affidavit of surety's senior claims representative which averred that claim paid to supplier under surety bond was properly paid); United States Fidelity &c. Co. v. Klein Corp., 190 Ill.App.3d 250, 253, 146 Ill.Dec. 848, 558 N.E.2d 1047 (1989) (affidavit of surety's *716 claims officer in charge of handling claims related to the underlying bond supported summary judgment against indemnitors).[2]
Second, we reject appellants' contention that the billing summaries attached to Silverstein's affidavit are hearsay. In support of this argument, appellants rely on Southern Co. v. Hamburg, 233 Ga.App. 135, 503 S.E.2d 383 (1998), a case that is distinguishable from the instant case. In Southern Co., we reversed the trial court's reentry of an award of attorney fees and expenses of litigation based on an evidentiary proffer of billing sheets, expense reports and summaries. Id. at 136, 503 S.E.2d 383. Because most of the billings were recorded by persons who did not testify at the hearing, we had previously rejected the summaries in an earlier appearance of the case, Southern Co. v. Hamburg, 220 Ga.App. 834, 470 S.E.2d 467 (1996), as "nothing more than `hearsay, and hearsay, even when admitted into evidence without objection, lacks probative value to establish any fact.'" (Citations and punctuation omitted). Id. at 842(5), 470 S.E.2d 467.
The facts and circumstances of this action for indemnification are entirely different. By signing the indemnity agreement, appellants expressly agreed that vouchers or other evidence of USF & G's payments on behalf of Eagle or an itemized statement sworn to by an officer of USF & G shall be prima facie evidence of the fact and extent of appellants' liability to USF & G. USF & G submitted Simanski's and Silverstein's affidavits as prima facie evidence of the payments made by USF & G on behalf of Eagle. Attached to Simanski's affidavit is a summary of all losses, expenses and costs. Attached to Silverstein's second affidavit is a similar summary, as well as copies of checks and billing statements from USF & G's and Eagle's attorneys and the construction consultant. The trial court was authorized to consider the summaries attached to Simanski's and Silverstein's affidavits as prima facie evidence of USF & G's damages. See, e.g., Rhodes, supra at 441-442(1), 428 S.E.2d 581.
Similarly, we reject appellants' contentions that the material contained in Silverstein's affidavit is inherently unreliable and that USF & G should have produced Silverstein at the hearing. But see Rhodes, supra at 442(1), 428 S.E.2d 581 (rejecting indemnitor's contention that computer-generated summary of claims and expenses paid by surety under bonds was inadmissible because the summary was not supported by documents accessible to the court and the parties, because auditor who prepared the summary testified regarding its identity and contents). Compare Sullivan, supra at 827-829(3), 403 S.E.2d 208 (in action for indemnification, attachments to insurance liquidator's affidavit were insufficient to support grant of summary judgment because (1) there was no evidence that liquidator was personally involved in the matter, and (2) the attachments to the affidavit, establishing that the surety made payments, were neither sworn nor certified). Specifically, we reject appellants' argument that USF & G's failure to produce the underlying bonds is fatal to USF & G's claim. The indemnity agreementnot the underlying bondsis at issue in this case. It is sufficient that Silverstein's affidavit confirms that USF & G issued bonds on behalf of Eagle.[3] Further, as we have noted repeatedly, appellants expressly agreed that an itemized statement sworn to by an officer of USF & G shall be prima facie evidence of the fact and extent of appellants' liability to USF & G.
2. In their next enumeration of error, appellants argue that the trial court ignored Rogers' affidavit, which "elucidates the flimsiness and incompleteness of Mr. Silverstein's affidavits, [and] also delineates several *717 areas of factual dispute between the parties which make summary judgment inappropriate." This argument is meritless.
Appellants' argument misses the mark. The question here is not whether a factual dispute exists, but whether there is any evidence of bad faith on the part of USF & G. Since Rogers' affidavit does not point to any evidence of bad faith, the trial court was authorized to find that the affidavits and attached documents filed by USF & G were sufficient to establish the amount of USF & G's damages.
3. We similarly reject appellants' contention that the trial court did not view the evidence in the light most favorable to appellants. Given the fact that appellants have not pointed to any evidence of bad faith on the part of USF & G, this argument fails.
Judgment affirmed.
BLACKBURN, P.J., and BARNES, J., concur.
NOTES
[1] Silverstein stated that USF & G had paid to IGI $10,324.12, for its services in researching appellants' assets and resources. The trial court declined to award this amount to USF & G, finding that the expense involved an issue of fact. On June 19, 2003, USF & G dismissed this claim against appellants.
[2] Even if Silverstein's affidavits were insufficient under the indemnity agreement, USF & G also filed the affidavit of Vice President Simanski in support of its first motion for summary judgment. Appellants do not dispute Simanski's position as a USF & G officer.
[3] In light of this finding, we need not address the issues raised by appellants in their reply brief, specifically, that USF & G impeded access to the underlying bonds. Appellants raised this issue at the hearing and the trial court apparently rejected it. Interestingly, despite appellants' apparent frustration with USF & G's counsel's alleged actions, appellants never moved to compel production of the documents.