A04A2059, A04A2060. EUDY v. UNIVERSAL WRESTLING CORPORATION, INC. et al.; and vice versa.
(611 SE2d 770)

BARNES, Judge.

Sidney Eudy was a professional wrestler who performed under the name "Sid Vicious." In 1999, he entered into a three-year contract with World Championship Wrestling, Inc. ("WCW"). On January 14, 2001, Eudy performed a move that had been choreographed for him by a WCW employee and suffered compound fractures of his left tibia

---

[50] *Happoldt v. State*, 267 Ga. 126 (475 SE2d 627) (1996).
[51] *Gray v. State*, 257 Ga. App. 393 (571 SE2d 435) (2002).

and fibula. WCW subsequently reduced Eudy's pay and then terminated his contract as of June 2001. Eudy sued the company, now owned by Universal Wrestling Corporation, Inc., along with Turner Sports, Inc., Turner Entertainment Group, Inc., and John Laurinaitis, who choreographed the wrestling match (collectively "WCW"). After discovery, the defendants moved for summary judgment, which the trial court granted in part and denied in part.

Eudy appeals the trial court's grant of summary judgment against him in Case No. A04A2059, contending that the trial court erred in granting summary judgment on his claims of breach of contract, breach of fiduciary duty, negligence, negligent infliction of emotional distress, tortious interference with contractual relations, and attorney fees. WCW appeals the denial of summary judgment to it in Case No. A04A2060 on Eudy's claims for breach of an oral agreement and unjust enrichment. For the reasons that follow, we affirm the order in Case No. A04A2059, and affirm in part and reverse in part the order in Case No. A04A2060.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997). Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001). Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981).

This case involves the construction of an employment contract and consideration of whether the Workers' Compensation Act forecloses Eudy's ability to make certain claims against WCW. In this state,

> [t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some

respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. (Cit.)

*Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999). The existence or nonexistence of an ambiguity is a question of law for the court. *Southeast Atlantic Cargo Operators v. First State Ins. Co.*, 197 Ga. App. 371, 372 (398 SE2d 264) (1990). If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in OCGA § 13-2-2. Id.

### Case No. A04A2059

1. Eudy contends that the trial court erred in granting summary judgment to WCW on his breach of contract claim against WCW for improperly reducing his pay, failing to pay full compensation for pay-per-view ("PPV") events, and improperly terminating his contract. WCW responds that all of its actions were allowed under Eudy's contract.

The contract between Eudy and WCW, titled "Independent Contractor Agreement," spelled out the terms of compensation and performance. The parties anticipated the possibility that the wrestler could become injured, because the contract provides that "[i]n the event Wrestler is unable to perform due to Incapacity as defined below," then different compensation terms apply. "Incapacity" is defined "as Wrestler's inability to perform all of the physical requirements of the Services." After 30 days of incapacitation, WCW could terminate the agreement without further obligation; further, unless and until the company terminated the agreement, WCW could choose to pay Eudy either one-third of his compensation or pay him one-half of his normal compensation for nonwrestling services. Additionally, the contract provided that WCW could terminate the agreement "with or without cause after giving Wrestler at least three months prior written notice."

After Eudy's disabling leg fractures, WCW did not terminate him after thirty days, but instead paid him fifty percent of his base pay and what he would have earned for five PPV events, and eventually terminated him with ninety days' notice. Eudy argues that a jury question exists as to whether he is entitled to the other fifty percent, because he contends that he was coerced into performing the wrestling move that ended his career. WCW responds that it complied

with the contract terms, that Eudy voluntarily chose to perform the maneuver knowing the danger involved, and that it did not coerce Eudy.

Eudy testified on deposition that he told Laurinaitis, the WCW employee who blocked the moves for the January 14, 2001 event, that he did not want to perform the final move, in which he was to jump from the second rope and land on his opponent. He testified that he said he was "just not a rope guy," being a big man. He was concerned about getting his timing right so he did not kick his opponent in the face, having just returned to the ring after shoulder surgery the year before. But, Eudy said, Laurinaitis kept telling him he needed to do the move, eventually handed him a written script, and told Eudy that if he took the move out, Laurinaitis would have to redraft the script. Then Eudy admitted that he agreed to perform the move, thinking he needed to prove himself to the company's new owners because he had been unable to work for some time due to previous injuries.

Eudy argues that the actions of WCW made it impossible for him to perform his side of the contract, and therefore he was entitled to all of his compensation under OCGA § 13-4-23, which provides: "If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." That statute is inapplicable here, because the contract itself provided for the contingency that Eudy might become injured. If he did become injured and unable to wrestle, then the contingent provisions of the contract took effect and Eudy's pay was reduced or he was terminated.

Because WCW complied with the terms of the contract, which unambiguously set out what would happen if Eudy became injured, the trial court did not err in granting summary judgment to WCW on Eudy's claims for improper reduction in pay, failure to pay full compensation for PPV events, and improper contract termination.

2. Eudy contends that the trial court erred in granting summary judgment to WCW because a jury question exists as to whether he was an independent contractor or an employee. If he is an employee, as he contends, then WCW had a duty not to give him orders that subjected him to an unreasonable risk of injury. *Shepard v. Streetman*, 198 Ga. App. 474, 475 (402 SE2d 87) (1991). Further, although the contract is titled "Independent Contractor Agreement," we would consider the substance of the parties' relationship, not WCW's characterization of the relationship, to determine this issue. See *Anderson v. United States Fidelity &c. Co.*, 267 Ga. App. 624, 627-628 (1) (600 SE2d 712) (2004). Eudy, however, failed to make this argument in his response to WCW's motion for summary judgment before the trial

court, and therefore we cannot consider it for the first time on appeal. *Crouch v. Federated Mut. Ins. Co.*, 257 Ga. App. 604, 608 (d) (571 SE2d 574) (2002).

3. Eudy asserts that the trial court erred in granting summary judgment to WCW on all of his tort claims (breach of fiduciary duty, negligence, negligent infliction of emotional distress, and tortious interference with contractual relations), and in holding that these claims were barred by the exclusive remedy provisions of the Workers' Compensation Act. Eudy contends that his claims fell within the "willful misconduct" exception to workers' compensation immunity, citing *Kellogg Co. v. Pinkston*, 253 Ga. App. 190, 191, n. 5 (558 SE2d 423) (2002).

WCW responds that both the Workers' Compensation Act and Eudy's contract foreclose Eudy's tort claims. The contract provides that:

> Wrestler acknowledges his present eligibility for workers' compensation through WCW. For so long as WCW maintains workers' compensation coverage, Wrestler agrees to accept the benefits provided by said workers' compensation coverage as his sole and exclusive remedy against WCW (including its parent, affiliates, employees and agents), for any and all injuries sustained during the Term.

Both parties agree that Eudy received workers' compensation benefits for the January 14, 2001 injury to his leg. Because the parties agreed in the contract that Eudy accepted workers' compensation benefits as his sole and exclusive remedy, he is foreclosed from bringing these tort claims against WCW. *Nat. Data Corp. v. Hooper*, 185 Ga. App. 866, 868 (366 SE2d 189) (1988). The trial court did not err in granting summary judgment to WCW on Eudy's tort claims.

### Case No. A04A2060

4. In its cross-appeal, WCW argues that the trial court erred in denying it summary judgment on Eudy's claims for unjust enrichment. Eudy bases those claims on WCW's repeated airings of the fight footage when he broke his leg and other uses of the mishap for marketing purposes, and on WCW's receipt of proceeds from a disability insurance policy.

(a) The trial court found that a jury question existed on the unjust enrichment issue because the television replays fell outside the contract provisions. To the contrary, the television replays are expressly addressed by the contract terms, which provide that anything to do with Eudy's wrestling persona was "work for hire" to which the

company retained all the rights. The contract provides that Eudy granted WCW "exclusive, paid-up, worldwide rights to . . . distribute, broadcast, photograph, film, tape or otherwise record, . . . any or all of the Events" and the rights "to use, exhibit and distribute, and to license others to use, exhibit and distribute, in perpetuity, any Program, or any part or segment of any Program, in any and all media and by any and all methods." Because Eudy granted WCW the right to tape the wrestling match, and to use and exhibit any part of the match, he cannot claim that WCW was unjustly enriched by doing so.

(b) WCW maintained an insurance policy with Lloyd's of London on Eudy for disability and long-term injury benefits, for which WCW was the beneficiary. Eudy contends that WCW was unjustly enriched by the insurance benefits, to which he is entitled. Under the policy terms, however, WCW — not Eudy — was entitled to receive partial reimbursement for payments made by WCW to any of the wrestlers named. In other words, Lloyd's repaid WCW for some of the benefits that it paid to Eudy. WCW was not enriched by the policy, but partially reimbursed.

Thus the trial court erred in denying summary judgment to WCW on Eudy's unjust enrichment claim.

5. Finally, WCW contends that the trial court erred in denying it summary judgment on Eudy's claim that WCW breached its oral agreement to pay him for a PPV event in which he did not appear, because the agreement provided that any modification had to be in writing. Eudy responds that he relied on this payment promise to his detriment, agreeing to fight before his doctor had cleared him medically following his shoulder surgery. His reliance was reasonable, he contends, because he had previously worked for WCW with no contract and had been paid. Based on the parties' deposition testimony, we agree with the trial court that a genuine issue of material fact exists for the jury to decide on this issue.

*Judgment affirmed in Case No. A04A2059. Judgment affirmed in part and reversed in part in Case No. A04A2060. Ruffin, C. J., and Mikell, J., concur. Blackburn, P. J., not participating.*

DECIDED MARCH 11, 2005.

*Weizenecker, Mottern & Fisher, Stephen G. Weizenecker, Kimberly K. Perez, Roxana F. Dehnad*, for appellant.
*Troutman Sanders, James A. Lamberth, Lynette E. Smith*, for appellees.