A10A0532. BOATRIGHT et al. v. OLD DOMINION INSURANCE COMPANY.

(695 SE2d 408)

PHIPPS, Presiding Judge.

Danny M. Boatright was injured while working on a construction site. He brought a personal injury action against various defendants, including Johnson's Kan Do Construction, Inc. (Kan Do). Kan Do had a liability insurance policy with Old Dominion Insurance Company (Old Dominion). Old Dominion brought a declaratory judgment action against Boatright, Kan Do, and the other defendants in the underlying action to determine whether Boatright's claims against Kan Do were subject to certain policy

---

exclusions.[1] The court granted summary judgment to Old Dominion in the declaratory judgment action, finding that Boatright's claims were not covered by the policy, and Boatright appeals. Finding no error, we affirm.

Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] On appeal from the grant or denial of summary judgment, we conduct a de novo review, construing the evidence and all reasonable conclusions and inferences drawn therefrom in the light most favorable to the nonmovant.[3]

1. Boatright contends that summary judgment was not proper because a jury question existed on whether he was an employee of Kan Do, and thus whether his claims against Kan Do were subject to a policy exclusion. The Old Dominion policy excluded from coverage claims brought by employees of Kan Do for bodily injury arising out of and in the course of their employment. Boatright argues that a jury could find that this exclusion did not apply to his claims because he was an independent contractor rather than an employee.

The Old Dominion policy did not define "employee" beyond stating in its list of definitions: " 'Employee' includes a 'leased worker.' 'Employee' does not include a 'temporary worker.' " In considering whether a worker was an employee or independent contractor for purposes of determining the coverage of an insurance policy, however, we have looked to whether the employer

> has assumed the right to control the time, manner, and method of executing the work. The right to control the time means the employer has assumed the right to control the person's actual hours of work. The right to control the manner and method means the employer has assumed the right to tell the person how to perform all details of the job, including the tools he should use and the procedures he should follow.[4]

---

[1] See generally *Stinson v. Allstate Ins. Co.*, 204 Ga. App. 420, 421 (419 SE2d 509) (1992) (claimants in tort action against insured, although not parties to insurance policy, nevertheless are proper parties in insurer's declaratory judgment action to determine policy coverage); *Famble v. State Farm Ins. Co.*, 204 Ga. App. 332, 335 (2) (419 SE2d 143) (1992) (declaratory judgment action brought by insurer to determine liability policy's coverage over tort claim brought against insured presented justiciable controversy between insurer and tort claimant, among others).

[2] OCGA § 9-11-56 (c).

[3] *O'Dell v. Pine Ridge Investments*, 293 Ga. App. 696 (667 SE2d 912) (2008).

[4] *Palma v. Ga. Farm Bureau Ins. Co.*, 270 Ga. App. 333, 336 (606 SE2d 341) (2004) (citation omitted); see *Wieland v. Ga. Farm Bureau Mut. Ins. Co.*, 226 Ga. App. 472, 474 (2) (486 SE2d 694) (1997); *Southern Gen. Ins. Co. v. Boerste*, 195 Ga. App. 665, 667 (2) (394 SE2d 566) (1990); see generally *RBF Holding Co. v. Williamson*, 260 Ga. 526 (397 SE2d 440) (1990)

The existence of this right to control by the employer may be inferred where the person is "employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum."[5]

The undisputed evidence showed that Kan Do employed Boatright to assist in building houses. Kan Do paid Boatright weekly by check. It provided the necessary tools and materials for Boatright's work, other than Boatright's own hammer, measuring tape and tool belt. Boatright was required to perform such work as instructed by Kan Do's foreman, who was his immediate supervisor and who was responsible for ensuring that the work of Boatright and other workers was being performed in the manner desired by Kan Do. Boatright described his work as follows: "I just helped [the foreman]. Whatever [the foreman] told me to do, if I knowed how to do it, I would do it; and if I didn't, he would show me." At the time of the accident, Boatright was installing rafters in a house at the instruction of the Kan Do foreman, who was using blueprints to give Boatright specific directions for the task. Boatright testified that he would not have known how to do that job without specific instruction from the foreman, because he had neither "done carpenter work [nor] built houses that long." This undisputed evidence demonstrated Kan Do's assumption of the right to control the manner and method of Boatright's work on the construction site.[6]

Other undisputed evidence further indicated that Boatright was an employee of Kan Do, rather than an independent contractor. Boatright testified that he had never operated his own business.[7] And workers in Boatright's position were subject to discharge by Kan Do, which in the past had discharged other workers for reasons such as drug use or failure to work hard.[8]

---

("true test" of whether person is employee or independent contractor is whether employer has right to direct time, manner, method and means of execution of work).

[5] *Kirk & Assoc. v. McClellan*, 214 Ga. App. 685, 688 (2) (448 SE2d 764) (1994); accord *Wieland*, supra.

[6] Compare *Atkins v. MRP Park Lake, L.P.*, 301 Ga. App. 275, 280-281 (1) (b) (687 SE2d 215) (2009) (finding evidence that construction workers performing work at apartment complex were employees of apartment management company where project manager in charge of work – an employee of the management company – instructed workers on when to report for work, told them on a daily basis what work to do, and regularly directed them in performing their work, and where in performing some of the work the workers used construction equipment available on the premises) with *Cooper v. Olivent*, 271 Ga. App. 563, 564 (1) (610 SE2d 106) (2005) (finding no evidence that brake mechanic was employee of store owner, where store owner did not provide any tools for mechanic's use, supervise mechanic, or control his work hours).

[7] See generally *Miller v. Clayton County*, 271 Ga. 135, 137 (4) (518 SE2d 402) (1999) (independent contractor is one who exercises independent business and is not subject to employer's immediate direction and control).

[8] See generally *Redd v. Brisbon*, 113 Ga. App. 23, 24-25 (147 SE2d 15) (1966) (power to

Boatright argues that evidence of the property owner's involvement in directing the construction of the house created a factual dispute as to whether Kan Do controlled the manner and method of his work. Another worker testified that the owner of the property on which the house was being built typically was present at the construction site and that the workers would tell him what work they planned to do that day. Sometimes, the owner would respond that he wanted the workers to do something else or to do the work in a different manner. This worker further testified that "most of the time, owners do want things done a certain way," and the Kan Do foreman testified that, as the house was being built, the owner "made up his mind how he wanted things done and to look" and accordingly would make change orders. We find no material conflict between the evidence that the property owner was involved in the construction of the house and Boatright's own testimony that his job was to do whatever the Kan Do foreman told him to do. That he might also have taken instruction from the property owner does not preclude a finding that he was an employee of Kan Do.[9]

Given the evidence establishing that Kan Do controlled the manner and method of Boatright's work, the fact that Kan Do issued its workers Internal Revenue Service Form 1099 (rather than Form W-2), considered them to be "self-employees," and did not withhold taxes from their paychecks or provide insurance for the workers does not create a jury question on Boatright's status as an employee. An employer's mere claim that its worker was an independent contractor is not conclusive of the worker's status.[10] And although decisions to not withhold taxes from a worker's pay or to not provide a worker with benefits may indicate that the worker was not an employee,[11] Boatright has cited no authority, and we have found none, for the proposition that such decisions alone can create a jury issue on the worker's status as employee or independent contractor in the face of undisputed evidence that the employer controlled the manner and method of the work.[12] To the contrary, we have held that "whether 'income tax' or 'social security' was withheld from [workers'] wages or not would not be conclusive of the relationship," where other

discharge is evidence of master-servant relationship).

[9] See generally *United States Fidelity & Guaranty Co. v. Forrester*, 230 Ga. 182, 185 (196 SE2d 133) (1973) (a person may be the servant of two masters at the same time).

[10] See *Eudy v. Universal Wrestling Corp.*, 272 Ga. App. 142, 145 (2) (611 SE2d 770) (2005).

[11] See, e.g., *Cooper*, supra.

[12] In *Knight v. Duke*, 218 Ga. App. 543 (462 SE2d 391) (1995), cited by Boatright, there was evidence that the worker was paid by the job and that the alleged employer did not control the manner in which the worker performed assigned jobs, in addition to evidence that the alleged employer did not withhold taxes or social security from the worker's pay. Id. at 544-545.

undisputed evidence showed that the workers were employees.[13]

Because the undisputed evidence showed that Boatright was an employee of Kan Do, the trial court did not err in holding that his claims were subject to the cited exclusion in the insurance policy. In light of this conclusion, we need not consider whether Boatright's claims were subject to other policy exclusions.

2. Boatright argues that, even if the policy does not cover his tort claims against Kan Do, Old Dominion nevertheless is estopped from challenging coverage under the policy. Pretermitting whether Boatright, as a third party to the insurance policy, has standing to claim that Old Dominion was estopped from challenging coverage,[14] we find that Boatright's estoppel arguments lack merit.

(a) Boatright contends that Old Dominion cannot challenge the policy coverage of his claims because it assumed the defense of Kan Do without first reserving its rights under the policy.

> It has long been the rule in Georgia that a liability insurer who assumes the conduct of the defense to an action with knowledge of facts constituting noncoverage and without disclaiming liability and giving notice of its reservation of rights is thereafter estopped from denying coverage. The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position.[15]

The undisputed evidence, however, showed that Old Dominion did *not* assume Kan Do's defense before giving notice of its reservation of rights. Old Dominion was informed of Boatright's action on October 30, 2006, after Kan Do already had filed an answer through an attorney not provided by Old Dominion.[16] On November 6, Old Dominion issued a reservation of rights letter to Kan Do, subject to which it retained other counsel to represent Kan Do in Boatright's action. An insurer is not estopped from challenging policy coverage where, as here, counsel *not* provided by the insurer answers the underlying tort complaint on the insured's behalf prior to the

---

[13] *Asbury v. Public Svc. Mut. Ins. Co.*, 101 Ga. App. 283, 286 (114 SE2d 40) (1960).

[14] See *Capitol Indem. Corp. v. Fraley*, 266 Ga. App. 561, 563-564 (1) (597 SE2d 601) (2004) (plaintiff in underlying tort action, who was not in privity of contract with insurer, could not complain in declaratory judgment action that insurer was estopped from challenging coverage because it failed to timely reserve its rights under policy with insured).

[15] *State Farm Fire & Cas. Co. v. Walnut Ave. Partners, LLC*, 296 Ga. App. 648, 653 (4) (675 SE2d 534) (2009) (footnote omitted).

[16] The attorney who filed the answer has been described in the record as Kan Do's personal counsel.

insurer notifying the insured of its reservation of rights.[17]

(b) Citing *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*,[18] Boatright argues that Old Dominion cannot challenge policy coverage because it failed to file the declaratory judgment action in a timely manner, thus prejudicing Kan Do. *Richmond* set forth a procedure by which an insurer could challenge policy coverage through a declaratory judgment where the insured refused to consent to a defense under a reservation of rights; this procedure included the requirement that the insurer "seek immediate declaratory relief."[19] Because Kan Do did not object to the reservation of rights letter, however, Old Dominion was not required to file a declaratory judgment action within any particular time period, or at all, to avoid estoppel.[20]

(c) Boatright argues that Old Dominion cannot challenge policy coverage because it breached its agreement under the policy to defend Kan Do by not providing Kan Do with a defense to the declaratory judgment action, as well as the underlying tort action. A liability policy that, as here, obligates an insurer to defend an insured against actions arising from bodily injury does not obligate the insurer also to defend the insured in a declaratory judgment action seeking to determine the insurer's liabilities and obligations under the policy.[21]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

### DECIDED MAY 17, 2010.

*Savage, Turner, Pinson & Karsman, Ashleigh R. Madison*, for appellants.

*Lane, O'Brien & Caswell, Stephen J. Caswell*, for appellee.

---

[17] See *Prescott's Altama Datsun v. Monarch Ins. Co.*, 253 Ga. 317, 318-319 (319 SE2d 445) (1984).

[18] 140 Ga. App. 215 (231 SE2d 245) (1976).

[19] Id. at 219 (1).

[20] See *Jacore Systems v. Central Mut. Ins. Co.*, 194 Ga. App. 512, 514 (1) (b) (390 SE2d 876) (1990).

[21] See *Gibson v. Southern Gen. Ins. Co.*, 199 Ga. App. 776, 778-779 (3) (406 SE2d 121) (1991).