**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 11, 2019**

# In the Court of Appeals of Georgia

A19A0583. AUTO-OWNERS INSURANCE COMPANY v. CW
  MASONRY, INC. et al.

BROWN, Judge.

Auto-Owners Insurance Company brings this interlocutory appeal from the trial court's order denying its cross-motion for summary judgment in an action Auto-Owners filed against CW Masonry, Inc. ("CWM"), and Clint and Lynnette Wauters (collectively "defendants") for indemnification under the terms of a performance and payment bond. For the reasons set forth below, we reverse the denial of summary judgment.

"We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Progressive Elec. Svcs. v. Task Force Constr.*, 327 Ga. App. 608, 609 (760 SE2d 621) (2014). Viewed in that

light, the record shows that July 8, 2009, CWM entered into a subcontract agreement with RTD Construction, Inc., whereby CWM agreed to provide masonry work for the City of Villa Rica's West Water Reclamation Facility Project. Defendants Clint and Lynnette Wauters, husband and wife, were the owners/officers of CWM. Pursuant to the terms of the subcontract, CWM was required to post a performance and payment bond in the amount of $435,000. Clint and Lynnette Wauters were both aware that RTD required the bond. On July 28, 2009, Clint Wauters applied for a bond by faxing to Auto-Owners a two-page document. The first page, designated "Page 1 of 2," is titled Application for Contract Bond, and lists CWM as applicant, RTD as obligee, and the Wauterses as indemnitors. The second page, designated "Page 2 of 2," is titled Indemnity Agreement.[1] The second document lists CWM as the Company

---

[1] As a general condition for the issuance of any bonds, Auto-Owners required CWM and the Wauters to execute an Indemnity Agreement. The Indemnity Agreement signed by the Wauters provides, in pertinent part, as follows:

The undersigned does or do hereby represent that the statements made herein as an inducement to the Company to execute or procure the bond or bonds herein applied for, are true, and should the Company execute or procure said bond or bonds, does or do hereby agree, for the undersigned, the heirs, personal representatives and assigns of the undersigned, jointly and severally, as follows: . . . [(2)] to indemnify the Company against all loss, costs, damages, expenses and attorneys fees whatever, and any and all liability

Name, and is signed by Lynnette Wauters individually, and Clint Wauters individually under the heading "Signatures"/"Personal Indemnitors." Clint Wauters

therefor, sustained or incurred by the Company by reason of executing of said bond or bonds, or any of them, in making any investigation on account thereof . . . [(3)] that the Company shall have the right, and is hereby authorized but not required: . . . (b) To adjust, settle or compromise any claim, demand, suit, or judgment upon said bond or bonds, or any of them, unless the undersigned shall request the Company to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Company , at the time of such request, cash or collateral satisfactory to it in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs and attorneys' fees . . . [(5)] that liability hereunder shall extend to, and include, the full amount of any and all sums paid by the Company in settlement or compromise of any claims, demands, suits, and judgments upon said bond or bonds, or any of them, on good faith, under the belief that it was liable therefor, whether liable or not, as well as any and all disbursements on account of costs, expenses and attorney's fees, as aforesaid, which may be made under the belief that such were necessary, whether necessary or not; [(6)] that in event of payment, settlement or compromise, in good faith, of liability, loss, costs, damages, expenses and attorney's fees, claims, demands, suits, and judgments as aforesaid, and itemized statement thereof, sworn to by any officer of the Company, or the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the undersigned, in any claim or suit hereunder, and in any and all matters arising between the undersigned and the Company. . . .

3

also signed on behalf of CWM under the heading "Signatures." CWM and the Wauterses do not dispute that Clint executed the application and signed the second-page Indemnity Agreement on behalf of CWM and himself, individually, or that Lynnette signed the second page, individually. Lynnette Wauters testified that she was aware that CWM applied for a bond from Auto-Owners and that her husband told her to sign both pages, but that she did not read what she was signing. According to Clint Wauters, "after [he] submitted [the] application, . . . Auto-Owners issue[d] a bond on [his] behalf." The bond is not dated, but listed CWM as the principal and Auto-Owners as the surety. The bond was signed by a surety representative, but the signature line for the principal was blank.

CWM began performing work at the project site in the fall of 2009, but walked off the project on May 27, 2010, after a dispute with RTD. As of May 28, 2010, RTD terminated the subcontract and notified Auto-Owners of its intention to file a claim against the bond for reimbursement of costs and expenses. After RTD filed its claim, other subcontractors, suppliers, and CWM vendors also filed bond claims. Auto-Owners, with the assistance of attorneys and specialists, spent approximately one and a half years investigating the claims under the bond. Auto-Owners communicated frequently with the Wauterses/CWM, in writing and by telephone, requesting their

4

input on the claims and sending supporting documents for their review, and even met with Clint Wauters and an RTD representative to discuss the status of the payment-bond claims received by Auto-Owners. An Auto-Owners representative spoke repeatedly with Clint Wauters about the bond claims and the indemnitors' indemnity obligations. In several written communications, Auto-Owners requested that the Wauterses post collateral in the amount of $60,000, if they wanted Auto-Owners to provide a defense to the bond claims, but neither the Wauterses nor CWM ever did so. The Wauterses and CWM disputed some claims, and maintained that RTD had lied and that its claim was not proper, but CWM never provided sufficient documentation or evidence to support its defenses. Auto-Owners eventually concluded that CWM defaulted on the project by walking off the job before completing its scope of work; failing to pay its subcontractors, laborers, and vendors; and failing to complete the work it did perform in a fit and workmanlike manner and free from defects and/or failing to complete the work it performed in conformance with the terms and conditions of its subcontract with RTD. Auto-Owners paid five payment bond claims asserted by CWM vendors in the total amount of $36,469.07, as well as RTD's bond claim in the amount of $117,770.25. In addition, Auto-Owners incurred legal and investigative costs in the amount of $125,308.49.

5

On January 19, 2017, Auto-Owners filed suit against defendants for indemnification. Subsequently, the Wauterses filed a motion for summary judgment "in favor of Defendants," on the ground that the indemnity agreement is not valid and enforceable, and violates the Statute of Frauds because it is a personal guaranty which must identify the parties, the debt, the principal debtor, and the promisor and promisee. Auto-Owners filed a cross-motion for summary judgment, disputing defendants' claim that the indemnity agreement is a personal guaranty, and contending that the indemnity agreement is unambiguous and its terms enforceable. Following oral argument, in which defendants' counsel waived participation, the trial court orally granted Auto-Owners' cross-motion for summary judgment. The trial court subsequently entered an order denying Auto-Owners' cross-motion for summary judgment, without explanation, concluding simply that "issues of material fact remain to be tried as to the validity of the indemnity agreement, and the issues of liability and the amount, if any, of damages." Auto-Owners appeals this ruling.

1. Auto-Owners contends that the trial court erred in denying its cross-motion for summary judgment because the indemnity agreement is a valid contract, enforceable against the Wauterses. In response, defendants contend that the indemnity agreement is actually a personal guaranty and unenforceable under the Statute of

6

Frauds because it does not sufficiently identify the name of the principal debtor or the promisee. Defendants further contend that even if we construe the agreement as an indemnity agreement, it still fails because it does not identify the party to be indemnified and is not incorporated into a document that does identify the parties.

The threshold question in this appeal is the nature of the second page signed by the Wauterses and labeled "Indemnity Agreement." Is the document a guaranty or an indemnity contract? "[A] contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another. . . ." OCGA § 10-7-1. See also 41 AmJur2d 4, Indemnity (2019) ("[a] 'guaranty agreement' is one in which the promisor protects his or her promisee from liability for a debt resulting from the failure of a third party to honor an obligation to that promisee — thus creating a secondary liability"). A contract of indemnity is a promise to accept liability for another's loss. See 41 AmJur2d 1, Indemnity (2019) ("[u]nder a contract for indemnification, one party (the indemnitor) promises to hold another party (the indemnitee) harmless for loss or damage of some kind, and the indemnitor promises to indemnify the indemnitee against liability of the indemnitee to a third person or against loss resulting from the liability"). This Court has explained the difference between the two as follows:

Like the contract of suretyship, the contract of indemnity has as its purpose security of the promisee against loss. The great difference between the two lies in the character of the promisee. In suretyship[/guaranty] the promise runs to an obligee or creditor, present or prospective. In indemnity the promise runs to an obligor or debtor present or prospective. In suretyship[/guaranty] the promisee has or is about to extend credit to a third person, the principal, and the promise is made to protect the promisee creditor in case the principal fails to perform. In indemnity, the promisee owes or is about to assume an obligation to a third person, the creditor, and the promisor agrees to save him harmless from a loss as a result of his assuming that obligation.

(Citation and punctuation omitted.) *Rankin v. Smith*, 113 Ga. App. 204, 207 (1) (147 SE2d 649) (1966). See also *Progressive Elec.*, 327 Ga. App. at 613 (1) (b) ("[a]n indemnity contract differs from a guaranty in that the former is an original rather than a collateral undertaking and generally undertakes to make good the promisee's loss resulting from his liability to another rather than from another's liability to him") (citation and punctuation omitted); 38 AmJur2d 11, Guaranty (2019) ("[t]he essential distinction between an indemnity contract and a guaranty is that in an indemnity contract, the promisor undertakes to protect the promisee against loss or liability to a third person, while in a guaranty, the undertaking is to protect the promisee against

8

loss through the failure of a third person to fulfill his or her obligations to the promisee").

A performance bond in the construction industry is a "'prime example' of an indemnification agreement because it creates a direct, primary liability between the promisor and the promisee that is original and independent of any other obligation." (Citation and emphasis omitted.) *Travelers Cas. and Sur. Co. of America v. Ream*, No. 07-171-DLB, 2009 WL 2969897, at *4 (1) (E.D. Ky., September 9, 2009). Under a performance bond, a surety posts a bond on behalf of a principal to guarantee performance, and the principal agrees to indemnify its surety for any loss arising out of non-performance. The disputed document signed by the Wauterses in this case is a contract of indemnity and not a guaranty. See, e.g., *Copeland v. Beville*, 93 Ga. App. 442, 443 (92 SE2d 54) (1956). As such, it falls outside the Statute of Frauds and need not be in writing to be enforceable. See *Progressive Elec*., 327 Ga. App. at 613 (1) (b) ("[c]ontracts of indemnity generally fall outside the Statute of Frauds") (citation omitted). See also *Flemister v. United Bonding Ins. Co.*, 122 Ga. App. 422, 423 (1) (177 SE2d 182) (1970) ("[a] promise by one person to indemnify another for becoming security to a third, is not within the statute of frauds, and need not be in writing") (citation and punctuation omitted). Compare OCGA § 13-5-30 (2) (promise

to answer for the debt of another must be in writing and signed by the party to be charged therewith); *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 104 (1) (661 SE2d 578) (2008) (the requirement that a guaranty must be in writing "has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promisee") (citation and punctuation omitted).

Indemnity agreements are interpreted under the rules governing contracts. See *Anderson v. U.S. Fidelity & Guar. Co.*, 267 Ga. App. 624, 627 (1) (600 SE2d 712) (2004). The main consideration in contract interpretation is the intent of the parties. *Megel v. Donaldson*, 288 Ga. App. 510, 513 (1) (654 SE2d 656) (2007). The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. See *Greenberg Farrow Architecture v. JMLS 1422, LLC*, 339 Ga. App. 325, 329 (1) (791 SE2d 635) (2016). See also *Anderson*, 267 Ga. App. at 627 (1). "Where ambiguities exist, the court may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent." (Citation and punctuation omitted.) *Greenberg Farrow*, 339 Ga. App. at 329 (1). Moreover, "contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court." (Citation omitted.) *Megel*, 288 Ga. App. at 513 (1).

10

The uncontroverted evidence in this case shows that the Wauterses agreed to indemnify Auto-Owners for any loss related to the performance and payment bond. Clint Wauters testified that RTD required CWM to obtain a payment and performance bond and that he sought such a bond from Auto-Owners. Lynnette Wauters also testified that she was aware that CWM had applied for a bond from Auto-Owners. The application and indemnity agreement is designated as a two-page document, and the first page identifies the company from whom CWM sought bonding — Auto-Owners — as well as the indemnitors — Clint and Lynnette Wauters. Both Wauterses admit to signing both pages, and Clint Wauters confirmed that he submitted both pages simultaneously to Auto-Owners in order for CWM to secure the performance and payment bond as required by RTD. Clint Wauters further testified that Auto-Owners issued the bond after he submitted both pages. That Lynnette Wauters did not read the two-page application and indemnity agreement when she signed it is inconsequential. See *Jaycee Atlanta Dev. v. Providence Bank*, 330 Ga. App. 322, 328 (3) (765 SE2d 536) (2014) ("the law is clear that parties to a contract must exercise ordinary diligence in making an independent verification of contractual terms and representations and ensure that they understand the contract's contents before signing it[;] the rule is that one who signs a contract is presumed to know its contents")

11

(citations and punctuation omitted). Because there is ample evidence that the Wauterses intended to enter into an indemnity agreement with Auto-Owners in which they agreed to become indemnitors for a performance and payment bond issued in connection with the subcontract agreement entered into by CWM for work on behalf of RTD, the trial court erred in finding that issues of material fact remain to be tried as to the validity of the indemnity agreement.

2. Auto-Owners contends that the trial court erred in finding that material issues of fact remain as to damages. The defendants contend that issues of material fact remain because Clint Wauters testified in his deposition that he contested the amounts paid by Auto-Owners and "specifically asked [Auto-Owners] not to pay the claim as RTD was not entitled to the amount sought."

Under an indemnity agreement, "the promisee may recover of the promisor the whole of the moneys which he was compelled to pay by virtue of the bond into which he entered. The assumption of the responsibility is a sufficient consideration for the promise." (Citations and punctuation omitted.) *Flemister*, 122 Ga. App. at 423 (1). Here, the Wauterses agreed that Auto-Owners had the discretion to adjust, settle, or compromise any claims upon the bond "unless [indemnitors] shall request [Auto-Owners] to litigate such claim or demand, or to defend such suit . . . and shall *deposit*

12

with [Auto-Owners], at the time of such request, cash or collateral satisfactory to it in kind and amount. . . ." The Wauterses also expressly agreed that an itemized statement sworn to by any officer of Auto-Owners shall be prima facie evidence of the fact and extent of their liability to Auto-Owners. The Wauterses assented to and are bound by these terms. Auto-Owners submitted the affidavits of its attorney and a senior attorney/records custodian to prove the demands/claims it received under the bond, as well as the expenses incurred in satisfying those claims, and the Wauterses expressly agreed that an itemized statement sworn to by any officer of Auto-Owners shall be prima facie evidence of the fact and extent of the Wauterses' liability to Auto-Owners.

There is also ample evidence that Auto-Owners repeatedly asked the Wauterses to post collateral, and that Clint Wauters admitted that he never posted collateral, even though the indemnitors were required to do so in order to contest any claims. Although defendants contend that RTD was not entitled to the amounts claimed, they have failed to submit any evidence to support this contention or to controvert Auto-Owners' payments. Moreover, by failing to post collateral, the Wauterses failed to comply with the terms of the indemnity agreement. Accordingly, there is no material issue of fact as to damages, and the trial court erred in denying Auto-Owners' cross-

13

motion for summary judgment on its claim for damages under the indemnity agreement. See, e.g., *Anderson*, 267 Ga. App. at 627-629 (1) (summary judgment as to liability and damages under indemnity agreement proper based upon affidavits of vice president and claims attorney/record custodian detailing claim payments and invoices); *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 555-556 (1) (583 SE2d 220) (2003) (in action under indemnity agreement, trial court properly directed verdict in favor of bond insurer where evidence showed that indemnitor failed to post collateral); *Ins. Co. of the West v. Alpha Dev. Corp.*, No. C09-5426RJB, 2009 WL 5064041, at *3 (11) (C) (W.D. Wash., December 15, 2009) (granting summary judgment to bond insurer on its claim for damages for breach of indemnity agreement where indemnitors failed to controvert evidence of incurred expenses/claim payments).

*Judgment reversed. Barnes, P. J., and Mercier, J., concur.*