A07A1032, A07A1033. MEGEL et al. v. DONALDSON et al.;
and vice versa.
(654 SE2d 656)

BARNES, Chief Judge.

In Case No. A07A1032, Dorothy Megel and Zana Sabre[1] (collectively "Megel") appeal the grant of partial summary judgment to John L. Donaldson, Faye K. Donaldson, and Senoia Manor, LLC (collectively "Donaldson"), and in Case No. A07A1033, Donaldson appeals the denial of his motion for summary judgment on Megel's claims for conversion and breach of contract. As we find the trial court correctly granted summary judgment to Donaldson in Case No. A07A1032, that judgment is affirmed. The judgment in Case No. A07A1033, however, must be reversed because we find that the trial court erred by denying in part Donaldson's motion for summary judgment.

Megel alleges that the trial court erred by finding no genuine issue of material fact existed on whether the entirety of the agreement to develop Senoia Manor was contained within the terms of the parties' explicit understandings as of December 5, 2003; whether Donaldson breached the understandings of December 2003 or should be estopped from denying enforcement of those agreements; whether Megel assented to the Development Agreement; whether the Development Agreement is void; whether it was induced by Donaldson's fraud; whether it is unconscionable and should be rescinded; whether

---

[1] Megel and Sabre are married.

it is unenforceable on account of the absence of a material term or provision, or because of accident or mistake; and whether Donaldson breached fiduciary duties owed to Megel in his "capacities as corporate officers/directors, majority shareholders, or otherwise."

This dispute arose from Megel's investment of $250,000 in a project to build a senior citizen living facility called Senoia Manor that Donaldson intended to develop in Senoia. An essential part of the project was changing the zoning where Donaldson intended to build Senoia Manor from single family to multifamily zoning. If the zoning was not changed, the project could not be developed, and ultimately the project failed because the local authorities refused to change the zoning. During the interim, the money Megel invested was spent for, among other things, Donaldson's living expenses.

Megel initially sued Donaldson for conversion, breach of contract, and fraud because of the way the money was spent. Megel contended that Donaldson took their money and spent it on living expenses. Later Megel amended the complaint seeking to rescind the contract and alleging fraud, securities violations, breach of fiduciary duties, and conversion. Donaldson contended, however, that the provision in the contract stating that the money could be spent on "salaries (general or normal household living expenses)" authorized him to spend the money as he did.

Although Megel and Sabre deny signing a development agreement, a document entitled Development Agreement ("the Agreement"), dated March 4, 2004, is in the record and the document bears their signatures. The Agreement provided that Donaldson's company, Rivercrest Development, would develop the project on behalf of Senoia Manor, LLC, in which Megel owned a 30 percent interest.

Section 4 of the Agreement, entitled *Compensation/Payment* states "The Developer shall earn a compensation for performance of the Development Services in the amount and manner set forth on Exhibit B attached hereto (the 'Development Fee')." Exhibit B, which follows the signature page of the Agreement, states:

*Exhibit B*

*Developer Fees*

The Developer's fee of $896,046 shall be payable at closing, with $842,213 of this fee (when paid by Owner to Developer) to be contributed to the Project by Developer as equity investment in exchange for a seventy percent (70%) membership interest in Owner.

*Use of Investor Funds*

Dorothy P. Megel and Zana F. Sabre shall contribute $252,000 to Senoia Manor, LLC in exchange for their membership interests in Owner of fifteen percent (15%) each, with these funds to be used as needed, estimated as approximately $15,000 to $20,000 per month, for salaries (general or normal household living expenses), overhead (general expenses including telephone and rent), and soft costs (general costs including surveys, land contracts, engineering and other expenses as described in the Development Budget) during development, construction and stabilization, estimated at 18 to 24 months. Megel and Sabre are hereby each granted rights of first refusal on up to fifteen percent (15%) interests in ownership entities of Developer in subsequent projects, subject to agreement between the parties.

Additionally, the Agreement in Section 14 contains the following provision:

*Entire Agreement/Written Modifications.* This Agreement contains the entire understanding between the parties with respect to the subject matter hereof. All representations, promises, and prior or contemporaneous understandings, between the parties with respect to the subject matter hereof are merged hereinto and expressed herein; and any and all prior understandings between the parties with respect to the subject matter hereof are hereby canceled. This Agreement shall not be amended, modified, or supplemented without the written agreement of the parties at the time of such amendment, modification or supplement.

The trial court found the agreement was not unconscionable, the absence of a written budget did not render the agreement unenforceable, the merger clause in the contract defeated Megel's fraud claims, Donaldson was not Megel's fiduciary, the Georgia Securities Act did not apply, and Megel was not entitled to rescind the contract based upon accident or mistake. Therefore, the court granted summary judgment to Donaldson on those claims. The court found that Megel entered into the contract with Donaldson and "simply failed to read it."

The court, however, denied Donaldson's motion for summary judgment on Megel's claim that Donaldson's investment of $50,000 in another project, Bethany Manor, was not authorized by the agreement because the court found an issue of fact on whether the

development fees amounted to a salary that could be used in other projects. Megel appeals from the grant of summary judgment to Donaldson and Donaldson cross-appeals from the denial of summary judgment on the Bethany Manor claim.

*Case No. A07A1032*

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). In Georgia,

> [t]he cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction. Further, the construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part. Moreover, no construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation. It is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless. Further, Georgia law imposes on both parties an implied duty of good faith in carrying out the mutual promises of the contract.

(Citations and punctuation omitted.) *Homelife Communities Group v. Rosebud Park, LLC*, 280 Ga. App. 120, 122 (633 SE2d 423) (2006). When construing contracts, words generally bear their usual and common signification, OCGA § 13-2-2 (2), and dictionaries may supply the plain and ordinary sense of a word. *Southern Guaranty Ins. Co. v. Duncan*, 131 Ga. App. 761, 764 (2) (206 SE2d 672) (1974). Further, contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court. *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995).

2. Megel's claims denying the existence of an agreement are without merit. Even though both Megel and Sabre claim that they did not sign the Agreement, they both acknowledge that the signatures on the signature page of the Agreement are theirs. Megel maintains that they believed they were signing a document connected to the transfer of stock, and that there were several loose pages, but nothing as thick as the Agreement. She testified that she did not remember

signing anything like the Agreement. Nevertheless, she acknowledges that the signature page is "obviously part of a larger document." Sabre states that he remembers nothing about the signing of the Agreement. Donaldson testified at his deposition, however, that he presented the whole document to Megel on March 4, 2004, and that they discussed the Agreement at that time.

Megel does not contend that she is unable to read or that Donaldson's fraud prevented her from reading the documents she signed before she signed it. Therefore, Megel's failure to read the Agreement does not affect its validity. One "who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve a party who can read must be such as to prevent him from reading." (Citations and punctuation omitted.) *Beckwith v. Peterson*, 227 Ga. 403, 404 (1) (181 SE2d 51) (1971).

Further, we find no merit to Megel's allegation that she merely signed blank signature pages. The page of the Agreement bearing the signatures of Megel and Sabre is not blank, and the signatures are preceded by a paragraph entitled "Section 24. *The Developer's Liability Limited.*" Section 24 consists of ten lines of type and limits the liability of the Developer for breach "of *this Development Agreement.*" (Emphasis supplied.) Also, the body of Section 24 refers to "Section 4" and later to "Section 4.2." Following Section 24 there are two lines of type stating: "IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS Agreement as of the day and year first above written." Following these lines are the signatures of all the parties.

Given the information on the page bearing her signature, Megel's protestations that she signed a blank page and did not know she was signing the Agreement are insufficient to create an issue of fact.

> One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud. One not prevented from reading the contract, and having the capacity and opportunity to do so, cannot after signing it claim he was fraudulently induced to sign by promises which contradict the express terms of the contract.

(Citations, punctuation and footnote omitted.) *Results Oriented v. Crawford*, 245 Ga. App. 432, 438-439 (1) (b) (538 SE2d 73) (2000). Consequently, "[a] contract was formed, and it was [Megel's] duty to

ensure [she] understood its contents before signing it." *Brewer v. Royal Ins. Co. of America*, 283 Ga. App. 312, 315 (1) (641 SE2d 291) (2007).

3. In the same manner, Megel's fraud claims are also without merit. "In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." (Citations omitted.) *Ainsworth v. Perreault*, 254 Ga. App. 470, 471 (1) (563 SE2d 135) (2002). The record in this case shows that Megel chose not to pursue any claim for rescission until filing the amended complaint. Instead, she chose to affirm the contract and sue for damages. This is shown by her complaint seeking damages for conversion, breach of contract, and fraud. Therefore, she lost her opportunity to seek rescission of the Agreement. See, e.g., *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 910-911 (2) (600 SE2d 841) (2004) (by taking action inconsistent with repudiation of the transaction plaintiff lost right to rescind contract); *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 146-147 (3) (524 SE2d 790) (1999) (original complaint affirming contract constituted election of remedies and waiver of rescission claim).

4. Megel's claim that the oral understandings reached in December of 2003 constituted the real contract between the parties is also without merit. Because Section 14 of the Agreement states that

> [a]ll representations, promises, and prior or contemporaneous understandings, between the parties with respect to the subject matter hereof are merged hereinto and expressed herein; and any and all prior understandings between the parties with respect to the subject matter hereof are hereby canceled,

she is estopped from asserting that she relied upon Donaldson's earlier promises. *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 828 (2) (586 SE2d 726) (2003). "In essence, a merger clause operates as a disclaimer of all representations not made on the face of the contract." *Ekeledo v. Amporful*, 281 Ga. 817, 819 (1) (642 SE2d 20) (2007).

5. Megel's claim that Donaldson breached his fiduciary duties to her in his "capacities as corporate officers/directors, majority shareholders, or otherwise" is also without merit.

> To support her breach of fiduciary duty claim, [Megel] must prove the existence of such duty, breach of the duty, and damages proximately caused by the breach. A fiduciary or

confidential relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." Such relationship may be created by law, contract, or the facts of a particular case.

(Footnotes omitted.) *Douglas v. Bigley*, 278 Ga. App. 117, 120 (1) (a) (628 SE2d 199) (2006). The transaction in this case was a business transaction in which the responsibilities of the parties were defined explicitly in the Agreement. Examination of the Agreement discloses no basis for finding the breach of a fiduciary or confidential relationship when the funds expended and actions taken were authorized by the Agreement.

Accordingly, we find that the trial court correctly ruled that the plain language of the contract, including the merger clause, bars Megel's claims for conversion, fraud, and rescission. Although Megel denied that she and Sabre signed the agreement, their signatures are plainly on the document, and are not alleged to be forged. Therefore, they are charged with knowledge of and are bound by the terms of the agreement. *Carter's Royal Dispos-All v. Caterpillar Financial Svcs.*, 271 Ga. App. 159, 161 (2) (609 SE2d 116) (2004). Our law does not permit parties to an agreement, whose signatures clearly appear on the document, to avoid their obligations under the agreement by merely stating that they did not sign the agreement or that they do not remember signing the agreement. Id. Further, contrary to Megel's assertions, the agreement specifically provides that Megel's investment could be used for "salaries (general or normal household living expenses)." Consequently, the plain terms of the agreement authorized Donaldson to use the money for purposes not directly related to the development of Senoia Manor. Accordingly, the grant of summary judgment to Donaldson is affirmed.

## Case No. A07A1033

6. Because the Agreement authorized the use of Megel's investment to pay Donaldson's salary, we must reverse the denial of summary judgment on Megel's claim arising from Donaldson's investment in Bethany Farms. Exhibit B to the Agreement provided for Megel's "funds to be used as needed, estimated as approximately $15,000 to $20,000 per month, for salaries (general or normal household living expenses), overhead (general expenses including telephone and rent). . . ." The Agreement placed no restriction on Donaldson's use of his salary, and we are aware of no interpretation

of "salary" which would prohibit Donaldson from using a salary he received for his "general or normal living expenses" to invest in another project if he chose. Therefore, the denial of summary judgment on this claim must be reversed and the case remanded to the trial court with instructions to grant summary judgment to Donaldson on this claim also.

*Judgment affirmed in Case No. A07A1032. Judgment reversed with direction in Case No. A07A1033. Smith, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 21, 2007.

*Bogart & Bogart, George R. Ference, Hill, Kertscher & Wharton, Peter F. Schoenthaler, Eric G. Maurer,* for appellants.
*Smith, Gambrell & Russell, Dana M. Richens,* for appellees.