**TRI–STATE CONSUMER INSURANCE COMPANY, INC., Plaintiff,**

v.

**LEXISNEXIS RISK SOLUTIONS INC., Defendant.**

**Civil Action No. 1:11–cv–1313–TCB.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 10, 2011.

**1312**

Christine R. Arnold, Kathleen Mary Kushi Carter, Hollins Law, Irvine, CA, Johnny Wayne Pierce, Pierce & Young, Atlanta, GA, for Plaintiff.

Jill Anne Pryor, Kamal Ghali, Randi Engel Schnell, Bondurant Mixson & Elmore, LLP, Atlanta, GA, for Defendant.

***ORDER***

TIMOTHY C. BATTEN, SR., District Judge.

This matter is before the Court on Defendant LexisNexis Risk Solutions, Inc.'s motion to dismiss Plaintiff Tri–State Consumer Insurance Company, Inc.'s original complaint [3] and Lexis's motion to dismiss TriState's amended complaint [8].

## I. Factual and Procedural Background [1]

■ This case involves a contract dispute between an insurance company and a software development company. In 2006, Tri–State decided to acquire new software for administering its insurance policies. After identifying potential vendors, Tri–State thoroughly researched Lexis's services by reviewing Lexis's advertisements, Lexis's website and other online resources. Tri–State then began communicating with Lexis through mail and in-person meetings, including visits to Lexis's facility in Melville, New York, regarding Lexis's personal lines software.

Throughout October and November 2007, Tri–State continued its communications with Lexis. As Tri–State reviewed Lexis's proposals, it relayed to Lexis its perceived shortcomings with the software as well as its concerns about the high cost. Lexis responded by emphasizing its software's flexibility, functionality and capabilities, and it ensured Tri–State that it would be able to offer the product at an affordable price. On November 29, 2007, Tri–State again went to Lexis's facility in New York to discuss Tri–State's reservations regarding the software. Again, Lexis represented to Tri–State that it would

---

1. On a motion to dismiss, the Court accepts as true all factual allegations set out in the complaint. *See Lotierzo v. Woman's World Med. Ctr., Inc.,* 278 F.3d 1180, 1182 (11th Cir.2002).

be able to deliver the product Tri–State needed.

As Tri–State got closer to making a decision to purchase the personal lines software, it requested information from Lexis regarding other Lexis clients who were using the software. Lexis performed a demonstration with screenshots of the purported delivery and integration of its software for Merastar Insurance Company, leading Tri–State to believe that Lexis had previously integrated and delivered the software successfully. When Tri–State discovered months later that Merastar had actually filed a lawsuit against Lexis regarding the software, Lexis represented to Tri–State that the lawsuit was against the former owners of the product only, when in fact, Insurity (which later became Lexis[2]) and one of its officers were defendants in the lawsuit.

At Tri–State's request, Lexis also provided Tri–State with a list of its personal lines clients. Later, Tri–State would discover that Lexis had affirmatively misrepresented or omitted material facts relating to the clients in the list and their alleged use of the software.

Unaware of Lexis's misrepresentations, Tri–State continued its talks with Lexis, and in December 2007 Lexis visited Tri–State's facilities. During the four-day visit, Lexis conducted a "requirements assessment" in which its representatives met with Tri–State's employees and executives in order to review, analyze and document Tri–State's high-level functional requirements and business processes. Following the assessment, Lexis assured Tri–State

that its software would improve Tri–State's operational and financial performance and enhance its accuracy, effectiveness and efficiency while decreasing operational expenses, all at an affordable cost and within a reasonable period of time.

On April 30, 2008,[3] Tri–State and Lexis executed a "master agreement" and a "software and services schedule." In these agreements, Lexis agreed to license, customize, develop, deliver, integrate and implement its "base software for policy decisions, billing decisions, and reporting decisions" for Tri–State. In the software and services schedule, Lexis represented that the software would support New York insurance issues as well as Tri–State's auto, homeowners and personal umbrella lines of business. The license fee for the base software was $1,250,000, with $250,000 to be paid upon execution of the master agreement and the balance to be paid in monthly installments of $125,000 starting May 1, 2008. Additionally, Lexis would perform certain customer-specific customizations for $245,000.

Following execution of the agreements, Lexis repeatedly failed to deliver the promised portions of the software on schedule. And when it did deliver those portions, they were riddled with errors. On each of these occasions, Tri–State timely notified Lexis of the problems and defects, but Lexis failed to remedy them.

In August 2009, after Tri–State expressed serious concerns about the project, Lexis provided Tri–State with a written guarantee of its performance and

---

**2.** Lexis was formerly known as ChoicePoint Services, Inc. and was the surviving entity of a merger with Insurity, LLC. In January 2010, ChoicePoint changed its name to LexisNexis Risk Solutions, Inc.

**3.** Tri–State asserts that the contract was actually executed on April 30 but that Lexis backdated the contracts to reflect an execution date of March 31, 2008. The contract states that its effective date is March 15, 2008.

promised to deliver the software in two phases. Lexis was to deliver Phase 1 software and services by November 19, 2009 and Phase 2 by January 21, 2010. Also, according to this writing Tri–State was not required to pay the remaining balance due under the contract unless Lexis performed according to the stated timelines.

Despite its promises, Lexis failed to deliver the software on either of the promised dates. Tri–State has paid Lexis $1,147,726.13 to date and still does not have any usable portion of the software.

On January 21, 2011, Tri–State filed its original complaint in the Superior Court of Fulton County, alleging claims for unjust enrichment, violation of New York State General Business Law § 349, breach of contract and breach of warranty. On February 21, Lexis filed its answer and a motion to dismiss, which argued among other things that Tri–State is precluded from bringing claims under New York law since the master agreement expressly provides that the contract is governed by Georgia law. On March 25, Tri–State filed an amended complaint, which omitted its claim under New York State General Business Law § 349. Additionally, the amended complaint added claims for fraud, breach of the implied covenant of good faith and fair dealing, unfair competition, and violations of the Georgia and Federal Racketeer Influenced and Corrupt Organizations Acts ("RICO"), the Lanham Act, and Georgia's Uniform and Deceptive Trade Practices Act ("GUDTPA").

On April 22, due to Tri–State's addition of Lanham Act and federal RICO claims, Lexis removed the case to this Court based on federal-question jurisdiction.[4]

On April 29, Lexis filed a second motion to dismiss all of the claims in Tri–State's amended complaint on the grounds that it fails to state a claim upon which relief can be granted. On October 7, the Court heard oral argument on the motion.

## II. Discussion

### A. Legal Standard

Under Fed.R.Civ.P. 12(b)(6), a complaint will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering a defendant's motion to dismiss under Rule 12(b)(6), the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003). However, "the court need not accept inferences drawn by [the plaintiff] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *accord Lewis v. Brautigam*, 227 F.2d 124, 127 (5th Cir.1955). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

In further clarifying the *Twombly* standard, the Supreme Court has adopted a two-pronged approach to evaluating motions to dismiss: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-

---

4. Although the stated ground for removal was federal-question jurisdiction, Lexis also alleged that the parties are citizens of different states and that the amount in controversy exceeds $75,000. Thus, despite dismissal of Tri–State's federal claims, this Court retains subject-matter jurisdiction under 28 U.S.C. § 1332.

pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

### B. Lexis's Original Motion to Dismiss

As an initial matter, the Court finds that Lexis's original motion to dismiss [3], filed before Tri–State filed its amended complaint, is moot. *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1219 (11th Cir.2007) (filing of amended complaint renders earlier-filed motion to dismiss moot). The Court therefore only considers Lexis's second motion to dismiss, which is directed to the amended complaint [8].

### C. Contractual Limitations Clause

 Because Lexis argues that all of Tri–State's claims are barred by the contractual limitations clause in section 8.5 of the master agreement,[5] the Court will address its applicability before analyzing each individual claim. That clause provides:

No action, regardless of form or substance, arising out of this Agreement or the performance or nonperformance of

any of the Parties' obligations hereunder may be brought more than one (1) year after a party knew or should have known of the occurrence of the event giving rise to such cause of action.

Tri–State alleges that the parties entered into an additional agreement in August 2009, which set forth two phases for delivery of the software. Lexis was to deliver Phase 1 by November 19, 2009 and Phase 2 by January 21, 2010. According to Tri–State, Lexis failed to deliver the promised software on either of the required dates.

In its motion to dismiss, Lexis argued that Tri–State's claims are time-barred because Tri–State did not file its complaint until January 21, 2011, even though it "should have known" of the basis for its claims by November 19, 2009—the Phase 1 deadline that Lexis allegedly failed to meet.[6] However, in its reply brief Lexis changed its argument regarding the exact date on which Tri–State should have known of its claims. Lexis now argues that no August 2009 agreement existed and that the relevant date for activating the one-year limitation was thirty-one days from August 29, 2009, the date on which Lexis allegedly informed Tri–State by

---

**5.** Although not included in the original or amended complaint, Lexis attached copies of the master agreement and the software and services schedule to its motion to dismiss. The Court may consider these documents in deciding the present motion. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

**6.** In its original complaint, Tri–State included a May 18, 2009 email from its project manager to Lexis's project manager rebuking Lexis for its pattern of concealment and deception. Tri–State did not include the email in the amended complaint. Lexis hypothesizes that Tri–State removed the allegation of the email and added the alleged August 2009 contract in order to avoid having its claims barred by the one-year limitations provision. Regardless of what motives Tri–State might have for amending, the amended complaint controls. *See Fritz v. Standard Sec. Life Ins. Co. of N.Y.,* 676 F.2d 1356, 1358 (11th Cir.1982) (under the Federal Rules, "an amended complaint supersedes the original complaint."). The Court therefore need only consider the allegations in the amended complaint.

email that Lexis would not deliver any further software absent a new agreement. To support its contention that the parties never reached an agreement in August 2009, Lexis attaches emails exchanged between the parties in which Lexis offers to enter into a new agreement. Lexis contends that Tri–State never accepted its offer and that the emails conclusively prove that no August 2009 contract existed. Lexis further argues that the contract required all modifications to be in writing and that the parties' emails clearly indicate that the parties did not reach any agreement—written or otherwise—in August 2009.

█ As an initial matter, Tri–State has sufficiently pled the existence of the August 2009 agreement, on which it premises its claim that Lexis attempted to cure deficiencies in the software up until January 21, 2010. In *Iqbal*, the Supreme Court explained, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129

S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). The Court further clarified that a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950. Tri–State's alleged existence of an August 2009 agreement is not merely a legal conclusion, but a factual allegation. At this stage the Court must accept such an allegation as true,[7] regardless of what evidence Lexis proffers, including the parties' emails. "[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of a statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about facts or the substantive merits of the plaintiff's case." 5B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 1356 (3d ed. 2004). Determination of such factual disputes is instead more appropriate at summary judgment.[8] Thus, the Court will not consider the emails in ruling on this motion. If, however, at the summary judgment stage Tri–State has

---

7. The Court also notes that at the hearing on this motion, Tri–State's counsel represented that she believes that Lexis's proffered emails do not constitute the entirety of the documents regarding the August agreement and that Tri–State will be able to produce additional documents to prove the agreement's existence.

Additionally, Tri–State's failure to allege consideration for the August 2009 agreement is not fatal to its claim. The contract presumably is governed by the Uniform Commercial Code. *See Richard Haney Ford, Inc. v. Ford Dealer Computer Servs.*, 218 Ga.App. 315, 316, 461 S.E.2d 282, 283 (1995) (applying UCC to contract for "computer services, including both hardware and software computer equipment"). And a contract governed by the UCC can be modified without the giving of additional consideration. *Dan Gurney Indus., Inc. v. Se. Wheels, Inc.*, 168 Ga.App. 504, 505, 308 S.E.2d 637, 638 (1983) (UCC expressly provides that consideration is not required for a contract modification to be enforceable).

8. The last portion of Rule 12(b) provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." However, "[a] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings." *Harper v. Lawrence Cnty., Ala.*, 584 F.3d 1030, 1034 (11th Cir.2009); *see also* WRIGHT et al., *supra*, § 1366 ("[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."). Rather than consider the emails at this time, the Court exercises its discretion to allow the parties to further develop evidence related to this issue through discovery.

still failed to come forward with any evidence of a written agreement, then its claim that such an agreement existed will likely fail.

■ As to the separate issue of the enforceability of the master agreement's one-year limitations provision, the Court finds that it is enforceable. In its response brief, Tri–State makes several attacks on the contract's validity, including that it is void for lack of certainty, void because there was no meeting of the minds, and unconscionable due to its exclusion of warranties and remedies. However, Tri–State did not raise any of these arguments or ask that the contract be set aside on these grounds in its amended complaint.[9] And as discussed in more detail below, rather than alleging that the contracts were invalid or making any claim for rescission, Tri–State has affirmed the contracts.

■ Moreover, the one-year provision applies to all of Tri–State's claims. Tri–State contends that because the provision appears in the "warranties and limitations of liability" section of the contract, it applies only to warranty claims. But the clause itself states that it applies to any "action … arising out of this Agreement or the performance or nonperformance of

any of the Parties' obligations hereunder. . . ." Additionally, the common-sense reading of the heading "warranties and limitations of liability" is that the section will discuss just that: warranties *and* limitations of liability—not limitations of liability of only warranties. Furthermore, the contract disavows the significance of any headings; section 12.14 of the master agreement provides that "headings in this agreement are inserted for reference and convenience only, and shall not be considered as substantive parts hereof."

Although the one-year limitations provision is enforceable, Lexis has failed to show that as a matter of law it bars all of Tri–State's claims. Section 8.5 was triggered when Tri–State "knew or should have known of the occurrence of the event giving rise to such cause of action." Lexis argues that the one-year period began to run as soon as Tri–State discovered any fact that should have excited its suspicion, i.e., when Lexis did not deliver the software by the Phase 1 deadline of November 19, 2009. Thus, according to Lexis, Tri–State was required to file suit on or before November 19, 2010. Lexis cites two cases in support of this contention: *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir.1987), and *Barton v. Peterson*, 733 F.Supp. 1482, 1491 (N.D.Ga.1990). However, no contract

---

**9.** Even if Tri–State had raised these claims, they would have failed. First, the fact that certain terms were left open—including the client requirement book, which was to be developed later and incorporated into the contract—does not render the contract void. *See Touche Ross & Co. v. DASD Corp.*, 162 Ga.App. 438, 439–40, 292 S.E.2d 84, 86 (1982) (contract for development, customization and programming of computer information system was not vague for uncertainty even though it left detailed tasks to be mutually agreed between parties as work progressed).

Second, both parties are sophisticated businesses who executed the contracts after nearly two years of negotiations. The Court fails to see how there was no meeting of the minds.

Third, the contract's remedy-limitations clause does not render the contracts unconscionable. Under the UCC, an agreement "may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of the nonconforming goods or parts." O.C.G.A. § 11–2–719(1)(a).

or contract-limitations clause was at issue in either of those cases, which dealt only with the triggering dates for statutes of limitations.

Tri–State contends that the limitations clause began to run when Tri–State allowed Lexis an opportunity to cure and Lexis failed to do so. The master agreement includes a provision (section 8.3) giving Lexis an opportunity—of unspecified duration—to cure any deficiency in the software and remedy any breach of the master agreement. Because no time period for cure is expressly stated, it cannot be said that as a matter of law Tri–State was required to file suit on or before November 19, 2010. It is true that section 10.3(a) of the master agreement authorized Tri–State to terminate the agreement if Lexis failed to initiate a remedy within thirty days of notice of a breach. However, 10.3(a) does not require Tri–State to exercise that option, nor does it expressly limit the cure period to thirty days. Tri–State was free to continue to allow Lexis to attempt to cure the breach. Thus, because Tri–State alleges that Lexis attempted to cure deficiencies through January 21, 2010 and the one-year limitations clause can reasonably be read to have been triggered upon expiration of the cure period, the one-year limitations clause does not, as a matter of law, bar TriState's claims.

Accordingly, although the contract's one-year limitations clause is enforceable, to the extent Lexis seeks dismissal of the amended complaint for Tri–State's failure to comply with that provision the motion will be denied.

### D. Unjust Enrichment

■ Lexis moves to dismiss Tri–State's unjust enrichment claim, arguing that "[u]njust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending unjust enrichment which the benefitted party ought to return or compensate for." *Wachovia Ins. Servs., Inc. v. Fallon,* 299 Ga.App. 440, 449, 682 S.E.2d 657, 665 (2009).

As discussed below, Tri–State does not properly allege rescission, nor does it allege that the contract is invalid. Consequently, "any benefit conferred on the defendant was triggered by a provision of the contract, the validity of which neither [the plaintiff] nor the defendant challenge. Under these circumstances, the unjust enrichment claim fails as a matter of law." *Tidikis v. Network for Med. Commc'ns & Research,* 274 Ga.App. 807, 811, 619 S.E.2d 481, 485 (2005). Tri–State's unjust enrichment claim will therefore be dismissed.

### E. Breach of Contract

■ Lexis argues that Tri–State's breach of contract claim must be dismissed because it is barred by the exclusive remedy limitation, which restricts Tri–State's remedies to either a replacement of nonconforming parts or a refund for the nonconforming portion of the software. According to Lexis, Tri–State cannot sue for a refund of the entire amount of fees paid because Lexis was not required to issue a refund, and even if it chose to issue a refund, the refund would be limited to only those portions of software not conforming to the warranty.

Tri–State has alleged that (1) it timely notified Lexis of deficiencies in the software; (2) all of the software is deficient; and (3) Lexis has failed to either cure the

deficiencies or issue a refund. Based on Tri–State's allegations, Lexis's obligation to either repair or refund under the contract was triggered by Lexis's failure to deliver conforming software. Although the contract left the choice of remedy to Lexis's discretion, as set forth below, Lexis was required to use good faith in exercising its discretion. Tri–State therefore states a claim for breach of contract, and Lexis's motion will be denied on this claim.

### F. Fraud Claims

Tri–State alleges two fraud claims against Lexis. In its fraudulent inducement claim, Tri–State alleges that it would not have entered into the contracts with Lexis but for Lexis's fraudulent misrepresentations. In its fraud-and-deceit claim, Tri–State alleges that it would not have continued to do business with Lexis had it been aware of the falsity of Lexis's representations. Because Tri–State has failed to allege all elements of fraud, does not meet the heightened pleading requirements for fraud, and has not alleged rescission, both of its fraud claims fail.

### 1. Tri–State Has Not Pled All Elements of Fraud

██ To allege a viable fraud claim under Georgia law, Tri–State must prove (1) a misrepresentation of material fact by Lexis; (2) Lexis's knowledge that the information was false (scienter); (3) Lexis's intention to induce Tri–State to act or to refrain from acting; (4) justifiable reliance by Tri–State; and (5) damage to Tri–State. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1288 (11th Cir.2007). Lexis argues that Tri–State has failed to state a claim for fraud because Lexis did not misrepresent a material fact, Tri–State failed to plead scienter, and any reliance by Tri–State was not justifiable.

██ A "false representation must relate to an existing or pre-existing fact." *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 883 (11th Cir.1983). "The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise any breach of a contract would amount to fraud." *Hamilton v. Advance Leasing & Rent–A–Car, Inc.*, 208 Ga.App. 848, 850, 432 S.E.2d 559, 561 (1993).

██ Tri–State's amended complaint sets forth twenty-five alleged misrepresentations of fact. Instead of involving facts in existence at the time of the representations, the majority of Tri–State's alleged representations involve Lexis's ability to perform under the contract. For example, Tri–State alleges that Lexis falsely represented that "its Base Software would improve speed to market [and] increase Tri–State's overall productivity and enhance its customer experience." These statements were merely "general commendations or mere expressions of opinion, hope, expectation and the like" rather than misrepresentations of pre-existing facts. *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1171 (11th Cir.1997).

██ The only alleged misrepresentations that actually relate to preexisting facts are Lexis's statements regarding its provision of software to Merastar Insurance. Lexis argues that the fraud claim based on these misrepresentations still fails because Tri–State has not pled scienter. However, Tri–State has sufficiently shown that Lexis knew its statements about Merastar were false when it made them. Specifically, Tri–State alleges that Lexis represented that it had successfully

integrated its personal lines software for Merastar when in fact Merastar had sued Lexis over the software's failure. Furthermore, Tri–State alleges that Lexis represented to Tri–State that the lawsuit was filed against only the former owners of the product in July 2006, whereas Merastar actually filed the lawsuit in September 2006 against Insurity and Clyde Owen, Insurity's senior vice president of business and product development. This is sufficient to show scienter.

■ However, Tri–State cannot show justifiable reliance, for two reasons. First, the master agreement's merger clause [10] and non-reliance clause [11] bar Tri–State from relying upon representations of fact not contained in the parties' written agreements. The language in both clauses is clear, and such clauses are routinely upheld by Georgia courts. *See, e.g., Werner Enters., Inc. v. Markel Am. Ins. Co.,* 448 F.Supp.2d 1375, 1382 (N.D.Ga.2006); *Ainsworth v. Perreault,* 254 Ga.App. 470, 471, 563 S.E.2d 135, 137 (2002); *Herman Homes, Inc. v. Smith,* 249 Ga.App. 131, 132, 547 S.E.2d 591, 593 (2001).

■ Second, even if these clauses did not bar Tri–State's claims, Tri–State has failed to show that it justifiably relied on Lexis's representations because it cannot show due diligence. "Georgia law places a significant due diligence burden on sophisticated parties engaged in arms-length transactions." *Fin. Sec. Assurance,* 500 F.3d at 1289. Tri–State alleges that it

repeatedly requested that Lexis set up a conference call with Merastar representatives, but Lexis failed to do so. Tri–State could have easily discovered for itself whether Lexis had successfully integrated and implemented its software for Merastar by contacting Merastar itself. Additionally, when Lexis disclosed to Tri–State that Merastar had filed a lawsuit regarding the software, Tri–State could have requested a copy of the lawsuit from Lexis, or itself obtained a copy of the lawsuit, to confirm the truth of Lexis's representations. Georgia courts do not afford legal relief "when one blindly relie[s] on misrepresentations of the other party as to matters of which he could have informed himself." *First Union Nat'l Bank v. Gurley,* 208 Ga.App. 647, 649, 431 S.E.2d 379, 381 (1993). Thus, Tri–State cannot show justifiable reliance.

**2. Tri–State Has Not Met the Heightened Pleading Requirements of Rule 9**

■ Lexis also argues that the amended complaint's fraud claims do not satisfy Fed.R.Civ.P. 9(b)'s pleading requirements. A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), Tri–State must show "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case

---

**10.** "This agreement (including any exhibits attached hereto) constitutes the entire agreement between the parties related to the subject matter hereof, and supersedes any and all prior and contemporaneous proposals, communications, agreements and understandings, whether oral or written concerning the subject matter hereof."

**11.** "EMPLOYEES OR AGENTS OF [Lexis] OR ANY THIRD PARTY HAVE NO AUTHORITY TO MAKE ANY REPRESENTATION OR WARRANTY REGARDING THE SOFTWARE AND CONSEQUENTLY, SHOULD NOT AND MAY NOT BE RELIED UPON BY CUSTOMER."

of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir.2002). Tri–State does not specify whether the representations were oral or written, does not identify where the statements were made, fails to identify who made any of the statements, and only generally alleges the dates the statements were made ("between February 2007 and March 28, 2008").

Tri–State argues that under this Court's decision in *Shared Network Technologies, Inc. v. Taylor*, 669 F.Supp. 422, 429 (N.D.Ga.1987), "while allegations of date, time or place fulfill the requirement," Tri–State is "free to use alternative means of injecting precision and some measure of substantiation" to its fraud claims. That may be, but Tri–State has not supplied such precision or measure of substantiation in its pleading. In *Shared Network*, a corporation brought a RICO claim against its former president, arguing that he had made a series of fraudulent misrepresentations to induce the corporation into paying invoices to a nonexistent business. To support its claim, the corporation stated the dates, descriptions and amounts due under the invoices; the purchase order and date and amount of a check signed by the former president; and the dates of board meetings at which the former president failed to disclose material information regarding the bogus invoices. In contrast, Tri–State does not reference any documents or exact dates. Because Tri–State has not "alleged fraud with sufficient particularity to place the defendant on notice and safeguard against spurious charges," *id.*, its fraud claims are not sufficiently pled.

### 3. Tri–State Has Not Pled Rescission

 Tri–State's fraud claims are also barred due to its failure to plead rescission. A party alleging fraudulent inducement into a contract has two options: (1) affirm the contract and sue in contract, or (2) rescind the contract and sue in tort. *Megel v. Donaldson*, 288 Ga.App. 510, 515, 654 S.E.2d 656, 661 (2007); *Ainsworth*, 254 Ga.App. at 471, 563 S.E.2d at 137. A claim for breach of contract unaccompanied by a claim for rescission is an affirmation of the contract. *Weinstock v. Novare Group, Inc.*, 309 Ga.App. 351, 354, 710 S.E.2d 150, 154 (2011); *Megel*, 288 Ga.App. at 515, 654 S.E.2d at 661. The only place in the amended complaint where the word "rescission" even appears is in the prayer for relief for the fraudulent inducement claim. This is insufficient to plead rescission. *See Holloman v. D.R. Horton, Inc.*, 241 Ga. App. 141, 146, 524 S.E.2d 790, 795 (1999) ("[T]he prayer is not an allegation in the complaint which requires an answer (OCGA § 9–11–8(d)) and is not part of plaintiffs' cause of action."). The amended complaint, by affirming the contract, constitutes an election of remedies and a waiver of any rescission claim.

Tri–State argues that under *Waller v. Scheer*, 175 Ga.App. 1, 5, 332 S.E.2d 293, 297–98 (1985), a plaintiff may pursue both a fraud and breach of contract claim prior to entry of judgment. It is true that a party may pursue both fraud and breach of contract claims—but only if both claims have been properly pled.

 Furthermore, even if the amended complaint did allege rescission, failure to allege recession in the original complaint would bar Tri–State from reviving the claim. *Megel*, 288 Ga.App. at 515, 654 S.E.2d at 661 (plaintiff "chose not to pur-

sue any claim for rescission until filing the amended complaint" and therefore "lost her opportunity to seek rescission of the Agreement"); *Holloman*, 241 Ga.App. at 146–47, 524 S.E.2d at 795–96 (original complaint affirming contract constituted election of remedies and waiver of rescission claim).

Accordingly, Tri–State's fraud claims will be dismissed.

### G. Civil RICO Claims

#### 1. Federal RICO

In its amended complaint, Tri–State alleges a federal civil RICO claim under 18 U.S.C. § 1962(c), which prohibits "any person employed or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Tri–State claims that Lexis's misrepresentations in its advertisements, website and print media, and through mail, telephone and email communications are violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, which constitute racketeering under 18 U.S.C. § 1961(1)(B).

■■■ To establish its claim under § 1962(c), Tri–State "must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racke-

teering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir.2006). Lexis argues that Tri–State has failed to sufficiently plead an enterprise.

■■■ The only entity that Tri–State names in its federal RICO count is Lexis. However, to sufficiently plead an enterprise under § 1962(c), Tri–State must "identify a RICO person distinct from the RICO enterprise." *U.S. v. Goldin Indus., Inc.*, 219 F.3d 1268, 1270 (11th Cir. 2000) ("[C]ourts have reasoned that the plain language of § 1962(c) envisions two separate entities, which comports with legislative intent and policy."). Tri–State's failure to name any third-party actors separate from Lexis and its employees forecloses its claim. *See Short v. Mano Am. Corp.*, No. 3:10–cv–350–MEF, 2011 U.S. Dist. LEXIS 11844, at *9 (M.D.Ala. Feb. 7, 2011) (dismissing § 1962(c) claim where plaintiff failed to allege any third-party actors in alleged RICO enterprise).

In its brief in opposition to Lexis's motion, Tri–State concedes that it has failed to sufficiently plead an enterprise. However, Tri–State also states that it "intends upon amending its complaint to add claims under Section 1962(a) and (b), under which the named defendant 'person' need not be separate and distinct from the RICO 'enterprise.' "[12] Despite its stated intention to amend, Tri–State has filed no motion for

---

12. Tri–State cites multiple cases to support its contention that it need not plead a person who is distinct from the enterprise in a § 1962(a) or (b) claim. Its argument indeed reflects the majority rule; however, other courts have found the opposite to be true. *See Nagle v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 790 F.Supp. 203, 208 (S.D.Iowa 1992) (acknowledging its holding as contrary to the other seven circuits that have ad-

dressed the issue and finding that the differences in the policies and linguistics of § 1962(a) and (c) necessitated differing requirements regarding the separateness of the person and enterprise). Neither the Supreme Court nor the Eleventh Circuit has ruled on this specific issue. Because Tri–State has not moved for leave to amend, the Court need not determine the pleading requirements of § 1962(a) or (b).

leave to amend, and the Court thus need not consider its federal RICO claim under these other subsections. *See Rosenberg v. Gould,* 554 F.3d 962 (11th Cir.2009) (district court has the discretion to deny leave to amend where the request is simply imbedded in an opposition memorandum); *U.S. ex rel. Atkins v. McInteer,* 470 F.3d 1350 (11th Cir.2006) (plaintiff who wishes to amend his complaint must do so by (1) moving the Court for leave to amend pursuant to Fed.R.Civ.P. 15(a), and (2) attaching a copy of the proposed amendment to the motion "or set forth the substance thereof."). Tri–State's federal RICO claim will therefore be dismissed.

### 2. Georgia RICO

Tri–State also alleges that Lexis violated the Georgia RICO Act, O.C.G.A. § 16–14–4(a) and (b). Subsection (a) prohibits "any person, through a pattern of racketeering activity or proceeds derived therefrom" from acquiring or maintaining an "interest in or control of any enterprise, real property, or personal property of any nature, including money." Subsection (b) makes it unlawful for "any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." As with its federal RICO claim, Tri–State alleges that Lexis has engaged in a pattern of racketeering through mail and wire fraud.

Lexis contends that Tri–State's claim must be dismissed because Tri–State (1) cannot show that Lexis engaged in racketeering activity because it cannot show reliance, which is required to prove mail and wire fraud; (2) has not alleged a pattern of activity; and (3) fails to meet the heightened pleading requirements for RICO claims.

▇ Lexis first argues that Tri–State's claim fails because it cannot show justifi-able reliance. In support of its argument, Lexis cites *Pelletier v. Zweifel,* 921 F.2d 1465, 1499–1500 (11th Cir.1991), and *Prince Heaton Enterprises v. Buffalo's Franchise Concepts, Inc.,* 117 F.Supp.2d 1357, 1362 (N.D.Ga.2000). However, the U.S. Supreme Court has more recently addressed this exact issue, and in *Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), the Court held that a plaintiff asserting a federal RICO claim predicated on mail fraud need not show reliance upon the defendant's alleged misrepresentations. The Georgia Supreme Court has extended *Phoenix Bond* to Georgia RICO claims. *Pollman v. Swan,* 289 Ga. 767, 716 S.E.2d 191, 192–93 (2011) ("[T]he U.S. Supreme Court's decision in *Phoenix Bond* controls since 'racketeering activity' is defined in the Georgia RICO Act as being, in pertinent part, 'any conduct defined as "racketeering activity" under [the federal RICO Act].'"). Thus, Tri–State is not required to show reliance.

▇ Lexis next argues that Tri–State has alleged no "pattern" of criminal activity, only a series of statements arising out of the same transaction, i.e., the sale of a single suite of software to a single company. O.C.G.A. § 16–14–3(8) defines a pattern as two or more similar incidents of criminal conduct. The only on-point authority cited by Lexis for its contention that incidents arising out of a single transaction are insufficient to establish a pattern of racketeering activity is a Seventh Circuit case, *Talbot v. Robert Matthews Distributing Co.,* 961 F.2d 654, 663 (7th Cir.1992). However, the Eleventh Circuit's contrary holding is binding on this Court: "Acts that are part of the same scheme or transaction can qualify as distinct predicate acts." *Bank of Am. Nat'l*

*Trust & Sav. Ass'n v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986). Relying on its former decision in *United States v. Watchmaker,* 761 F.2d 1459, 1475 (11th Cir.1985), the court in *Touche Ross* found that because the plaintiff had alleged separate violations of mail and wire fraud, the pattern requirement was satisfied. *Id.* Thus, Tri–State's Georgia RICO claim would survive were it able to state claims for mail and wire fraud.

However, Tri–State's failure to sufficiently plead its fraud claim necessitates dismissal of its RICO claim as well. As explained above, the Court has determined that Tri–State's fraud claims—which Tri–State alleges as predicate acts under RICO—are deficient as a matter of law. Thus, its RICO claim also fails as a matter of law. *See J. Kinson Cook of Ga., Inc. v. Heery/Mitchell,* 284 Ga.App. 552, 560, 644 S.E.2d 440, 449 (2007) (where plaintiff fails to establish its claims upon which its RICO claim is predicated, "it follows that the Georgia RICO claims alleged by [plaintiff] fail as a matter of law."); *see also Blakey v. Victory Equip. Sales,* 259 Ga.App. 34, 39, 576 S.E.2d 288, 293 (2002); *Capital Constr. Co. v. Prof'l Serv. Indus., Inc.,* 258 Ga.App. 44, 47, 574 S.E.2d 333, 336 (2002). Therefore, Tri–State's Georgia RICO claim will also be dismissed.[13]

### H. Breach of Warranty Claims

### 1. Implied Warranty of Merchantability and Implied Warranty of Fitness for a Particular Purpose

▆▆ Tri–State seeks to bring two claims for breach of implied warranty. However, the master agreement explicitly precludes such claims. Section 8.2 of the contract provides: "[Lexis] MAKES NO WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE ... ALL OF WHICH ARE HEREBY EXPRESSLY DISCLAIMED." Under Georgia law, such a conspicuous and clear disclaimer forecloses all causes of action arising out of any implied warranties. *See* O.C.G.A. § 11–2–316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."); *Steele v. Gold Kist, Inc.,* 186 Ga.App. 569, 570, 368 S.E.2d 196, 198 (1988) ("The combination of the capitalization of the disclaimer and its contents was sufficient to preclude an action against appellee for breach of the implied warranties of merchantability and fitness."). Thus, the warranty disclaimer provision requires that these claims be dismissed.

### 2. Warranty of Repair

▆▆ The master agreement does include a "software warranty" guaranteeing that all software would contain all necessary features, perform all material functions, and operate in substantial conformance with the applicable specifications and documentation, i.e., the software and services schedule. Furthermore, under the "exclusive remedy" clause, Lexis agreed to either (1) correct or replace the nonconforming portion of the software within a

---

**13.** Had Tri–State not conceded the insufficiency of its federal RICO claim, that claim still would have been dismissed due to Tri–State's failure to plead fraud with the requisite particularity.

reasonable time of receiving written notice from Tri–State, or (2) provide a refund for the portions of software that do not conform to the warranty. Tri–State alleges it provided Lexis notice of the software's defects within a reasonable time after receiving the defective goods and that Lexis failed to remedy any of the defects.

Tri–State has alleged sufficient facts to support its breach of warranty of repair claim. Lexis maintains that Tri–State must allege which portions of the software do not conform to the warranty and allege that it provided sufficient written notice to Lexis when it discovered the alleged deficiencies. Tri–State has done this. In multiple sections of the complaint, Tri–State alleges that it discovered defects from late 2008 through January 2010 and that within a reasonable time it provided written notice to Lexis of the defects, which Lexis failed to remedy. Additionally, Tri–State alleges that no portion of the software conforms to the specifications and that Tri–State cannot access, let alone utilize, any portion of the software. Although Tri–State does not allege specific dates or point to specific portions of allegedly defective software, it has alleged sufficient facts to "plausibly give rise to an entitlement to relief" under its breach of warranty of repair claim. *Iqbal,* 129 S.Ct. at 1950.

██ In addition, Tri–State's claim survives despite the fact that it has not paid all fees due under the contract. Lexis argues that Tri–State is precluded from recovering under the repair warranty be-cause the warranty is expressly contingent on the timely payment of all fees and Tri–State affirmatively alleges that it failed to make all payments due under the master agreement. However, Tri–State also alleges that in the August 2009 modification to the contract, Lexis agreed in writing that Tri–State did not have to pay the entire remaining balance due under the contract unless Lexis performed by the promised timelines. In order to survive summary judgment on this claim, Tri–State will of course carry the burden of producing the alleged August 2009 agreement. But for now, its allegation is sufficient.

Lexis's motion to dismiss Tri–State's claim for breach of the warranty to repair will therefore be denied.

### I. Breach of the Implied Covenant of Good Faith and Fair Dealing

██ The UCC imposes an obligation of good faith upon every contract.[14] O.C.G.A. § 11–1–203. Tri–State alleges that Lexis breached the covenant of good faith and fair dealing by interfering with Tri–State's right to receive benefits under the contract and failing to deliver the promised software and services. Lexis's only argument for dismissal is that a claim for breach of the implied covenant of good faith and fair dealing cannot stand independent of a breach of contract claim. While it is true that such a claim does not survive if the breach of contract claim fails, *see, e.g., U.S. Faucets, Inc. v. Home Depot U.S.A. Inc.,* No. 1:03–cv–1572–WSD, 2006 WL 1518887,

---

14. The covenant would apply even if the contract were not subject to the UCC. The Supreme Court of Georgia has held that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Brack v. Brownlee,* 246 Ga. 818, 820, 273 S.E.2d 390, 391 (1980); *see also Kleiner v. First Nat'l Bank of Atlanta,* 581 F.Supp. 955, 960 n. 5 (N.D.Ga.1984) (citing O.C.G.A. § 13–4–20 for the principle that "[u]nder Georgia law, good faith is an element of every contract.").

at *5, 2006 U.S. Dist. LEXIS 35075, at *15–16 (N.D.Ga. May 31, 2006), as set forth above, Tri–State has averred valid claims for breach of contract and breach of the warranty of repair. Thus, Lexis's motion will be denied.

### J. Lanham Act

Tri–State agrees to the dismissal of its Lanham Act claim. Accordingly, this claim will be dismissed.

### K. Unfair Competition

■ Although Tri–State agrees to dismissal of its Lanham Act claim, it insists that it states a viable common-law unfair competition claim. Lexis, however, argues that Tri–State's claim fails because Lexis and Tri–State are not direct competitors. Without citing to any authority, Tri–State replies that Tri–State and Lexis need not be competitors for Tri–State to state a claim for unfair competition.

■ Tri–State's argument and, accordingly, its claim fail. The same factual and legal analysis is used for Lanham Act and Georgia common-law unfair competition claims. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.,* 496 F.3d 1231, 1248 n. 11 (11th Cir.2007); *Step Co. v. Consumer Direct, Inc.,* 936 F.Supp. 960, 967 (N.D.Ga.1994). The Lanham Act requires that allegedly false statements be made in the context of "commercial advertising or promotion." *Moulton v. VC3,* No. 1:00–cv–434–TWT, 2000 U.S. Dist. LEXIS 19916, at *13–14 (N.D.Ga. Nov. 6, 2000). "To qualify as commercial advertising or promotion, the communication must be commercial speech by a defendant in commercial competition with plaintiff...." *Wilchcombe v. Teevee Toons, Inc.,* 515 F.Supp.2d 1297, 1305 (N.D.Ga.2007), *aff'd,*

555 F.3d 949 (11th Cir.2009). Tri–State is not, and has not alleged that it is, a competitor of Lexis. Tri–State's claim for unfair competition will be dismissed.

### L. Georgia's Uniform Deceptive Trade Practices Act (GUDTPA)

■ Tri–State also brings a claim under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10–1–372(a), which provides:

A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

. . . .

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have ... ;

. . . .

(7) Represents that goods or services are of a particular standard, quality, or grade. . . .

Tri–State maintains that Lexis's factual misrepresentations on its website and in its print media regarding "the sponsorship, approval, characteristics, uses, benefits, quantities, standards, styles and/or models of its goods and services" induced Tri–State to enter into the contracts with Lexis. Tri–State also argues that Lexis's "false and misleading descriptions and misrepresentations relating to the nature, characteristics and qualities of its goods, services and commercial activities were and are likely to cause confusion or misunderstanding or to deceive the public" regarding its goods and services.

The GUDTPA authorizes injunctive relief for a person "likely to be damaged by a deceptive trade practice," O.C.G.A. § 10–1–373(a), but does not allow damages.

*Moore–Davis Motors, Inc. v. Joyner*, 252 Ga.App. 617, 619, 556 S.E.2d 137, 140 (2001) ("[T]he sole remedy available under the UDTPA is injunctive relief."). Lexis contends that because Tri–State does not allege that it will be harmed in the future, it has no right to injunctive relief.

Tri–State argues that it has alleged both past and future harm, which is sufficient to sustain a claim for injunctive relief. However, the only damages that Tri–State alleges are those that it has *already* suffered. Tri–State therefore fails to show it is likely *to be* damaged. *Vinson v. P & G Mfg. Co.*, No. 108–003, 2008 WL 4889677, at *4, 2008 U.S. Dist. LEXIS 91559, at *11 (S.D.Ga. Nov. 12, 2008) ("A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is 'likely to be damaged' within the meaning of [the GUDTPA]."); *see also Catrett v. Landmark Dodge, Inc.*, 253 Ga.App. 639, 644, 560 S.E.2d 101, 106 (2002). Accordingly, Tri–State's GUDTPA claim will be dismissed.

### III. Conclusion

Lexis's motion to dismiss is GRANTED IN PART and DENIED IN PART. The following claims remain: (1) breach of contract, (2) breach of the warranty of repair, and (3) breach of the implied covenant of good faith and fair dealing. All other claims are DISMISSED.